G34dmurc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                          15 Cr. 0769(AJN)

5   ANTHONY MURGIO, YURI LEBEDEV
    and TREVON GROSS,
6
                   Defendants.
7
    ------------------------------x
8

9                                          March 4, 2016
                                           2:52 p.m.
10

11  Before:

12                     HON. ALISON J. NATHAN,

13                                         District Judge

14
                           APPEARANCES
15
    PREET BHARARA
16       United States Attorney for the
         Southern District of New York
17  BY:  EUN YOUNG CHOI
         DANIEL S. NOBLE
18           Assistant United States Attorneys

19  ROTHMAN, SCHNEIDER, SOLOWAY & STERN LLP
         Attorneys for Defendant Anthony Murgio
20  BY:  ROBERT A. SOLOWAY
         LUCAS ANDERSON
21           – and –
    BAKER MARQUART LLP
22  BY:  BRIAN E. KLEIN (via speakerphone)

23

24

25

G34dmurc

APPEARANCES CONTINUED

CREIZMAN PLLC
    Attorneys for Defendant Yuri Lebedev
BY:  ERIC M. CREIZMAN
     CAROLINE J. POLISI

KROVATIN KLINGEMAN LLC
    Attorneys for Defendant Trevon Gross
BY:  KRISTEN SANTILLO


          – also present –

SA Patrick Hoffman, FBI

                              oOo

          (Mr. Soloway not present)

          THE CLERK:  U.S. v. Anthony Murgio, et al.

          All parties, please state your name for the record,

starting with the government.

          MS. CHOI:  Good afternoon, your Honor.  Eun Young Choi

and Daniel S. Noble on behalf of the government.  With us at

counsel table is FBI Special Agent Patrick Hoffman.

          THE COURT:  Good afternoon to the three of you.

          MR. NOBLE:  Good afternoon, your Honor.

          MR. ANDERSON:  Good afternoon, your Honor.  Lucas

Anderson here for Robert Soloway, who is in another courtroom

in this building and he may be down in a few minutes, here for

Mr. Murgio.

          THE COURT:  Good afternoon to you both.  And,

Mr. Anderson, we just noted that we did get the note that Judge

Engelmayer was keeping Mr. Soloway and that you would be here

G34dmurc

1  today, and we note that there is not a notice of appearance on

2  your behalf on the docket.

3          MR. ANDERSON:  We will remedy that as soon as

4  possible.

5          THE COURT:  Thank you.

6          MR. CREIZMAN:  Good afternoon, your Honor.  Eric

7  Creizman on behalf of Yuri Lebedev and with me is attorney

8  Caroline Polisi from my office.

9          THE COURT:  Good afternoon to the three of you.

10          MR. KLEIN:  Good afternoon, your Honor.  This is Brian

11  Klein (unintelligible) on the phone from Los Angeles, and I

12  represent also Mr. Murgio.

13          THE COURT:  All right.  Thank you, Mr. Klein.  Good

14  afternoon.

15          And go ahead.

16          MS. SANTILLO:  Good afternoon, your Honor.  My name is

17  Kristen Santillo, from Krovatin Klingeman, on behalf of Trevon

18  Gross.

19          THE COURT:  Good afternoon to you both.  Please be

20  seated.

21          I believe the first matter of business for today's

22  conference is, Ms. Choi, to do an arraignment on the

23  Superseding Indictment.

24          MS. CHOI:  Yes, your Honor.

25          THE COURT:  All right.  So I will note that -- and,

G34dmurc

1    Ms. Choi, the Superseding Indictment adds Mr. Gross as a

2    defendant and indicates charges with respect to him.  With

3    respect to the existing defendants, there are no changes, is

4    that correct?

5              MS. CHOI:  That is correct, your Honor.

6              THE COURT:  All right.  Thank you.  But I will conduct

7    the arraignment on the Superseding Indictment with respect to

8    all three defendants and I'll begin with Mr. Gross.

9              Well, for everyone it is the same set of questions, to

10   confirm that you have received a copy of the Superseding

11   Indictment, that you have had some opportunity to review it

12   with your attorney.  I'll ask whether you want me to read the

13   indictment out loud or if you waive the public reading, and

14   then I'll ask if you would like me to -- if you wish me to

15   enter a plea of not guilty on your behalf.

16             So, Mr. Gross, can I confirm that you have received a

17   copy of the Superseding Indictment?  At the top it is indicated

18   as S2 15 Cr. 769.  Did you receive it, sir?

19             DEFENDANT GROSS:  Yes, I have.

20             THE COURT:  Did you have some time to review it with

21   your attorney?

22             DEFENDANT GROSS:  Yes, your Honor.

23             THE COURT:  Do you waive the public reading?

24             DEFENDANT GROSS:  Yes, your Honor.

25             THE COURT:  Do you wish that I enter a plea of not

G34dmurc

1    guilty?

2         DEFENDANT GROSS:  Yes, your Honor.

3         THE COURT:  Thank you, sir.  You may be seated.

4         Mr. Murgio, have you received a copy of the

5    Superseding Indictment?

6         DEFENDANT MURGIO:  Yes, your Honor.

7         THE COURT:  And you have had some time to review it

8    with your attorney?

9         DEFENDANT MURGIO:  Yes, your Honor.

10        THE COURT:  Do you waive the public reading?

11        DEFENDANT MURGIO:  I do.

12        THE COURT:  And do you wish me to enter a plea of not

13   guilty?

14        DEFENDANT MURGIO:  Yes, your Honor.

15        THE COURT:  Thank you.

16        Mr. Lebedev -- I know I asked this the last time.  Am

17   I saying your name correctly?

18        DEFENDANT LEBEDEV:  Yes.

19        THE COURT:  You received a copy of the Superseding

20   Indictment?

21        DEFENDANT LEBEDEV:  I did, your Honor.

22        THE COURT:  And have you had some opportunity to

23   review it with your attorney?

24        DEFENDANT LEBEDEV:  Yes, your Honor.

25        THE COURT:  Do you waive the public reading?

G34dmurc

1          DEFENDANT LEBEDEV:  Yes, your Honor.

2          THE COURT:  And do you wish that I enter a plea of not

3    guilty?

4          DEFENDANT LEBEDEV:  Yes, your Honor.

5          THE COURT:  Thank you.  Please be seated.

6          All right.  So I think what makes sense next is,

7    Ms. Choi, if you can provide a status update and particularly

8    with respect to where we are in terms of the discovery that has

9    been made, which we've talked at earlier points about its

10   volume and how it would be provided to defendants.  So let's

11   begin there.

12         MS. CHOI:  Yes, your Honor.  Discovery was

13   completed -- substantially completed in January as to the

14   individual two defendants in the case.  That included the

15   applications that went along with any search warrants, a mass

16   of bank records, financial records and the like, that are being

17   governed by the protective order your Honor put in place, as

18   well as the electronic evidence that belonged to each

19   defendant.

20         At the time, the government asked that the defendants

21   determine if there are any materials therein that would be

22   either privileged and thus should be produced to the

23   codefendants or contained otherwise sensitive materials that

24   they wanted to withhold from discovery.  The attorneys are in

25   the midst of doing that.  I think we are hopeful that will be

G34dmurc

1    done by early next week such that the entire set can be then

2    distributed to the rest of the codefendants.

3         As you know, Mr. Gross was arraigned -- I'm sorry, was

4    presented initially yesterday, and I think your Honor has a

5    copy of the proposed protective order that is the same terms as

6    what you've already entered.  Ms. Santillo and Mr. Gross have

7    agreed to the terms of that protective order, but we've already

8    started discovery with regard to Mr. Gross and we hope to

9    complete that process in the next two weeks.

10        With regard to electronic discovery, we're hopeful

11   that we can do that also within that timeframe with the caveat

12   that if it turns out that there is a large breadth of documents

13   that are being withheld for whatever reason and it may take us

14   a little bit more time to work that out, it may be slightly

15   delayed, but we are optimistic that it will be done quite

16   quickly, your Honor.

17        THE COURT:  OK.  Discovery with respect to Mr. Gross

18   is the same categories as discovery with respect to the other

19   defendants?

20        MS. CHOI:  It is.  There were some documents that we

21   held back from discovery to Mr. Murgio and Mr. Lebedev because

22   they pertain specifically to Mr. Gross.  We'll produce those

23   within the next two weeks.

24        THE COURT:  OK.  Any post-arrest statements with

25   respect to Mr. Gross?

G34dmurc

          MS. CHOI:  Yes.  We'll produce any post-arrest

statements.  I do not believe that he had any, as he was

represented by counsel, but I will double-check on that.

          (Mr. Soloway present)

          THE COURT:  Thank you.  All right.  So that's our

discovery schedule.  Anything defense counsel wish to raise

with respect to the discovery schedule or proceeding under any

concerns?

          MR. CREIZMAN:  Your Honor, nothing other than the

severance motion that is pending before the Court.  I mean --

and to the extent that we need to renew it based on the

Superseding Indictment, we renew our severance motion for the

same reasons set forth in our papers.

          THE COURT:  OK.  I am prepared to give an oral ruling

on the severance motion.  I can do that now.

          This is Mr. Lebedev's motion for severance.  He's

charged with one count of conspiring to make corrupt payments

with intent to influence an officer of a financial institution,

in violation of 18 U.S.C. Section 371.  This charge stems from

Mr. Lebedev's alleged role in the operation of Coin.mx, a

website that the government claims served as an illegal Bitcoin

exchange.  The government contends that Mr. Lebedev conspired

with his codefendant Mr. Murgio and others to bribe the

executive of a credit union in New Jersey, and the purpose of

the bribe, as alleged, was to gain control of the credit union,

G34dmurc

1    which, as alleged, aided the conspiracy in processing

2    transactions for the illegal Bitcoin scheme.

3              Mr. Lebedev was originally charged pursuant to a

4    Superseding Indictment on December 1, 2015.  I've just

5    arraigned him on the Superseding Indictment now, S2 15 Cr. 769.

6    At the time Mr. Lebedev was indicted, Mr. Murgio had already

7    been charged with one count of conspiring to make corrupt

8    payments with intent to influence an officer of a financial

9    institution, one count of actually making such payments, and

10   five other counts relating to his alleged role with Coin.mx.

11             As noted, I've arraigned both Mr. Lebedev and

12   Mr. Murgio and now Mr. Gross, the new codefendant, on this

13   second Superseding Indictment.  And Mr. Gross is charged with

14   one count of receiving corrupt payments as an officer of a

15   financial institution with the intent to be influenced.  The

16   second Superseding Indictment otherwise does not alter the

17   charges against Mr. Lebedev and Mr. Murgio.

18             Trial in this matter was set and scheduled for

19   October 31, 2016, and, as indicated, Mr. Lebedev has moved to

20   sever his trial from that of Mr. Murgio and now his additional

21   codefendant; in the alternative, to sever the trial of the

22   bribery counts from the trial of the remaining five counts in

23   the Indictment.  Mr. Lebedev argues that a severance is

24   justified because a joint trial would cause him substantial

25   prejudice and because holding the trial in October of 2016 he

G34dmurc

1   indicates would violate his constitutional and statutory speedy

2   trial rights.  For the reasons that I'm about to explain, the

3   motion is denied.

4           Rule 14 of the Federal Rules of Criminal Procedure

5   permits a court to "sever the defendants' trials, or provide

6   any other relief that justice requires" if "consolidation for

7   trial appears to prejudice a defendant."  Generally, "there is

8   a preference in the federal system for joint trials of

9   defendants who are indicted together."  That preference is

10  particularly strong where, as here, the underlying crime

11  involves a common plan or scheme.  United States v. Cardascia,

12  951 F.2d 474 (2d Cir. 1991).  Nonetheless, a court may grant a

13  motion to sever if "there is a serious risk that a joint trial

14  will compromise a specific trial right of one of the

15  defendants, or prevent the jury from making a reliable judgment

16  about innocence or guilt."  I'm citing the Supreme Court's

17  decision in Zafiro, 506 U.S. at 539.

18          The factors that courts in this district consider in

19  deciding whether to grant a severance include:  First, "the

20  number of defendants and the number of counts" in the

21  indictment; second, the "complexity of the Indictment"; third,

22  the "estimated length of the trial"; fourth, differences

23  between the level of involvement of the defendant "in the

24  overall scheme"; fifth, "possible conflict between various

25  defense theories"; and sixth, prejudice that would result from

G34dmurc

```
 1    evidence that is "admissible as to some defendants, but not
 2    others."  No one factor is dispositive, however, and the
 3    ultimate decision whether to grant severance rests with the
 4    discretion of the trial court.
 5            Applying the factors that I have indicated to
 6    Mr. Lebedev's case, it is clear that this is not one of the
 7    rare instances in which I must sever the defendant's trial.  As
 8    an initial matter, Mr. Lebedev does not contest that several
 9    factors are inapplicable here.  First, with respect to the
10    number of defendants, there were two and now there are three
11    defendants charged in this case, which is not an unmanageable
12    or a particularly high number; second, Mr. Lebedev does not
13    argue that the indictment is particularly complex; and,
14    finally, Mr. Lebedev never suggests that there may be a
15    conflict between the defense theories that he and Mr. Murgio
16    and presumably now Mr. Gross will put forward.
17            The arguments on the remaining factors that
18    Mr. Lebedev makes -- the length of trial, the differences
19    between the level of involvement of the defendants in the
20    overall scheme, and the prejudice that would result from
21    evidence that would be admissible, he says, with respect to
22    Murgio but not with respect to Lebedev -- these all revolve
23    around the basic claim that there will be considerable evidence
24    presented at a joint trial that would be irrelevant to the one
25    count for which Mr. Lebedev is charged and that will be
```

G34dmurc

inflammatory and unduly prejudicial.

Specifically, he contends that the government will
introduce evidence that Murgio and others miscoded credit and
debt card transactions to obscure Bitcoin transactions,
evidence of misrepresentations to financial institutions,
evidence that Murgio and others communicated with Coin.mx
customers and instructed them to lie to financial institutions,
and evidence that Murgio structured wire transfers to prevent
financial institutions from discovering that the transactions
were facilitated by an unlicensed money transmitting business.
By contrast, Lebedev suggests that the government's evidence in
a bribery trial against him would be limited to witnesses
testifying about payments that were made, the actions that the
defendants requested in exchange for those payments, some
limited documentary evidence, and a recorded conversation.

The government, however, contends that there would be
substantial overlap between the evidence adduced at a trial of
Mr. Murgio and the evidence at a separate trial of Lebedev.
The government claims that it will demonstrate that Lebedev
aided Murgio in the building, operation, and concealment of
Coin.mx, and that it will introduce evidence concerning the
entire operation of Coin.mx.  This evidence, the government
argues, would be both relevant and highly probative of
Lebedev's corrupt intent and will therefore aid in the
government's efforts to show that Lebedev conspired to bribe

1   the Credit Union executive.

2          I agree that much of the evidence as proffered and

3   presented to me at this stage with respect to the operation of

4   Coin.mx may be relevant to Mr. Lebedev.  As the Second Circuit

5   has explained, there is value in introducing evidence that will

6   "enable the jury to understand the complete story of the crimes

7   charged," or "how the illegal relationship between

8   [co-conspirators] developed."  See United States v. Reifler,

9   446 F.3d 65, 92 (2d Cir. 2006).  But more to the point,

10  evidence that Mr. Lebedev knew about or participated in any

11  efforts to conceal an illegal Bitcoin operation would be

12  relevant in proving the count that he is charged with.  The

13  underlying bribery offense at issue here, i.e., the object of

14  the charged conspiracy, prohibits corruptly giving something of

15  value to the agent of a financial institution in connection

16  with any businesses of that institution.  18 U.S.C. Section

17  215(a).  Any evidence that Lebedev was aware of efforts to

18  conceal Coin.mx's alleged illegal activity would tend to prove

19  that the conspiracy was carried out with corrupt intent.

20          To be sure, as Mr. Lebedev points out, the government

21  does not need to prove that the object of the conspiracy was to

22  conceal an illegal Bitcoin operation in order to prove that the

23  defendants acted "corruptly."  Rather, "[t]he motive to act

24  corruptly is ordinarily a hope or expectation of either

25  financial gain or other benefit to oneself or some profit or

benefit to another."  <u>United States v. McElroy</u>, 910 F.2d at

1021 (2d Cir. 1990).  But evidence that the alleged

conspirators were covering up an illegal Bitcoin operation

would certainly make it more probable that they had agreed to

make payments to the Credit Union executive for "financial

gain" or some "other benefit."

　　　　　Lebedev further argues that the government has no

evidence that he had any knowledge of the illegal nature of

Coin.mx.  The government disputes this characterization,

claiming that Lebedev and Murgio had numerous conversations

about the coding of the Coin.mx website to ensure that an

Internet search engine would not realize that Coin.mx was

operating through multiple connected sites.  Additionally, the

government claims that Lebedev proposed to Murgio that Coin.mx

offer exchange services through Russian payment processors so

that "Russians can...wash money as well."  And that's a quote

from the opposition brief.  This suggests that much of the

evidence that the government hopes to introduce to show how the

alleged conspirators concealed an illegal Bitcoin operation

would presumably be admissible at a separate trial of

Mr. Lebedev.  If so, then this case does not fall into the

category of cases where there is a substantial quantity of

evidence that is admissible as to some defendants but not

others.  Similarly, if the previously described evidence is

admissible, then Lebedev's claims that a joint trial would take

G34dmurc

 1    too long and that the lion's share of the evidence would be

 2    directed at Murgio, that loses force.  Accordingly, the factors

 3    that I indicated earlier and outlined in the Ramos decision do

 4    not support granting a severance.

 5            But even if Mr. Lebedev is correct that a substantial

 6    portion of the government's evidence will not pertain to him --

 7    and, as I've said, I don't, based on what's in front of me,

 8    understand that to be the case -- nevertheless, severance is

 9    still not necessary.  For starters, the Court can avoid the

10    risk of any "spillover prejudice" by "explicitly instructing

11    the jury to consider the defendants individually."  See, United

12    States v. Spinelli, 352 F.3d 48 (2d Cir. 2003).  Limiting

13    instructions are the "preferred device for curing any

14    prejudicial spillover" when compared with the far more

15    "burdensome" and "extreme" remedy of severance.  Ramos, 346

16    F.Supp.2d.

17            Moreover, the facts of this case are quite a distance

18    from the cases in this circuit where courts have decided to

19    sever the defendants' trials.  Mr. Lebedev relies on cases such

20    as United States v. Stoecker, 920 F.Supp. 876; United States v.

21    Upton, 856 F.Supp. 727; United States v. Gallo, 668 F.Supp.

22    736, and United States v. Burke, 789 F.Supp.2d, and most of

23    those are from the Eastern District of New York.  The first one

24    is from the Northern District of Illinois.  But each one of

25    those cases relied on in Mr. Lebedev's briefs involved a

G34dmurc

substantial number of defendants a long and/or complex

indictment, a very lengthy trial, charges of violent crimes

that applied only to some defendants, or a subset of those

factors.  Just to give one example, in Stoecker, there was a

98-page Indictment that included 58 counts, and the government

estimated the trial would last three months.  There were 13

charged defendants in Upton and 16 in Gallo, and in Burke one

defendant was charged with two counts related to witness

tampering whereas the other defendants were charged with

participating in a three-decade RICO conspiracy that included

three murders, several robberies and assaults.

        Here, by contrast, we now have three defendants, which

is not an unusually large number, eight counts in the most

recent Indictment, and the government has estimated that a

trial will last three to four weeks at most.  And although

Mr. Lebedev tries to argue that conspiring to bribe a credit

union official is distinct from the other charges in the

Indictment, the bribery charge is closely related to the

overall scheme of operating and concealing an illegal money

transmitting business.  In sum, this case does not present "a

serious risk that a joint trial would compromise" Mr. Lebedev's

trial rights, and a joint trial will not "prevent the jury from

making a reliable judgment about his guilt or innocence."

There is thus no need to sever Mr. Lebedev's trial under Rule

14.

G34dmurc

1          The same logic applies to Mr. Lebedev's alternative

2     request to sever the trial of the bribery counts for all the

3     defendants from the trial of the remaining five counts in the

4     Indictment.  If the government will present evidence of the

5     scope of the alleged conspiracy in a separate trial of

6     Mr. Lebedev, it will certainly do so in a trial that also

7     includes Murgio.  I will not grant severance on this

8     alternative ground.

9          Turning to Mr. Lebedev's speedy trial rights, he

10    claims that requiring him to wait to go to trial until

11    October 31, 2016, would violate both the Constitution and the

12    Speedy Trial Act.  The Sixth Amendment guarantees that criminal

13    defendants "shall enjoy the right to a speedy...trial."  And in

14    Barker v. Wingo, the Supreme Court identified four factors that

15    courts should consider when deciding whether a delay violates

16    the Constitution.  Those factors are the "length of delay, the

17    reason for delay, the defendant's assertion of his right, and

18    prejudice to defendant."

19         Here, only the defendant's assertion of his speedy

20    trial right cuts in favor of Mr. Lebedev.  Since his

21    arraignment, Mr. Lebedev has requested a trial date before

22    October 2016.  The government characterizes his preferred trial

23    date as in "mid-July," which I believe was an accurate

24    description of his original request, but it is the case that

25    he's indicated he would prefer an even earlier trial date.  But

G34dmurc

1   even if I were to grant -- if the Court were to schedule

2   Mr. Lebedev's trial as early as the end of May, there would

3   still be a gap of only five months between his preferred date

4   and the October 31st trial date currently on the calendar and

5   in total a gap of 11 months between the original indictment and

6   the October trial date.  The parties dispute whether a delay of

7   more than eight months between indictment and trial is

8   presumptively prejudicial, citing the Second Circuit's decision

9   in Vassell, 970 F.2d 1162.  But like the Court in Vassell, this

10  Court need not decide whether this delay is "presumptively

11  prejudicial," because even assuming it is, the analysis of the

12  remaining Barker factors does not favor Mr. Lebedev.

13          First, there are good reasons for trying this case in

14  October of this year.  The materials turned over by the

15  government in discovery include terabytes of information, and

16  it requires substantial time for counsel for both defendants to

17  review that discovery, brief any pretrial motions and motions

18  in limine, and prepare for a three- to four-week trial.

19          Second, Mr. Lebedev has failed to show that he'll

20  suffer meaningful prejudice from the gap in time.  Mr. Lebedev

21  is not incarcerated, and he has not argued that his defense

22  will be impaired, which the Court in barker called the "most

23  serious" form of prejudice, other than to suggest that he may

24  not be able to afford his retained counsel indefinitely.  But

25  as the government notes, the Criminal Justice Act provides

G34dmurc

1    options for ensuring the adequacy of Mr. Lebedev's

2    representation, including the possibility of retaining his

3    current counsel.

4          To be sure, Mr. Lebedev has experienced what the

5    Second Circuit terms "non-trial-related hardships," United

6    States v. Cain, 671 F.2d 271.  He points to the strain on his

7    reputation, his career, his family, and his education as

8    examples of the prejudice he has suffered and may suffer.  But

9    the source of that prejudice seems principally to be the fact

10   of the charges against him rather than any additional delay of

11   several months in proceeding to trial in accordance with what

12   appears necessary in light of the many factors in this case and

13   the needs of codefendants in preparing for trial.  Moreover, as

14   the government points out, the Second Circuit frequently has

15   declined to find a speedy trial violation in cases where the

16   defendant faced considerably greater prejudice than Mr. Lebedev

17   does here.  For example, in Flowers v. Warden, the Second

18   Circuit found that the defendant's 17-month pretrial

19   incarceration did not violate his speedy trial rights, and the

20   cite for that case is 853 F.2d 131 (2d Cir. 1988).  The Court

21   observed that this period of incarceration did not approach the

22   prejudice suffered by defendants in cases where the Second

23   Circuit had found speedy trial violations.  Whatever prejudice

24   Mr. Lebedev will experience likewise falls short of the

25   prejudice that would be needed to tip the Barker factors in his

G34dmurc

1   favor.  Accordingly, he has not shown a violation of his

2   constitutional speedy trial right.

3           And, finally, Mr. Lebedev has also not shown that the

4   eleven-month delay between his indictment and trial would

5   violate the Speedy Trial Act.  Mr. Lebedev invokes 3161(h)(6)

6   of the Act, which allows for "[a] reasonable period of delay

7   when [a] defendant is joined for trial with a codefendant as to

8   whom the time for trial has not run and no motion for severance

9   has been granted."  But that section is less applicable to

10  Mr. Lebedev than it would be to Mr. Murgio, who was indicted

11  before Mr. Lebedev and could in theory have been prejudiced by

12  the fact that Mr. Lebedev's speedy trial clock had not begun to

13  run when he was indicted.  To the extent Mr. Lebedev relies on

14  the general unreasonableness of the length of time until trial

15  in this case, the speedy trial analysis that I explained

16  earlier makes clear that such a delay is reasonable in light of

17  the volume of discovery, the need to draft motions and prepare

18  for trial, and the level of prejudice, or lack thereof, to

19  Mr. Lebedev.

20          For the foregoing reasons, Mr. Lebedev's motion for

21  severance is denied.

22          All right.  So we have our -- and I do want to make

23  sure, Ms. Santillo, that you are aware of the trial -- of the

24  schedule that's been set and give you an opportunity to raise

25  any issues with respect to that.

G34dmurc

1          MS. SANTILLO:  Sure.  We are aware of the trial date.

2     We were informed by the government.  Today we received one CD

3     of documents that I believe is a minimal amount in connection

4     with the overall discovery.

5          THE COURT:  Could you pull up a mic.  Thank you.

6          MS. SANTILLO:  I'm sorry.

7          THE COURT:  Say that again.

8          MS. SANTILLO:  I would just note that we received one

9     CD of discovery from the government today that I have not yet

10    had an opportunity to look at.  I believe that there is a

11    substantial volume that has yet to be produced to us.  Without

12    having an opportunity to even have a sense of the scope of the

13    discovery, it is hard to commit to an October trial date right

14    now.

15          What we can do -- and it is up to your Honor -- is

16    perhaps have an opportunity to review the volume of discovery

17    in the next couple of weeks and to submit a status report, or

18    something along those lines, to give you a better sense of how

19    we would view the time and resources we need in order to

20    adequately defend the case.

21          THE COURT:  All right.  Ms. Choi.

22          MS. CHOI:  Your Honor, to the extent that it would be

23    helpful to defense counsel, obviously the government is always

24    willing and able to help pinpoint the parts that are most

25    relevant.

G34dmurc

1          With regard to the scope of electronic discovery, it

2     is significant.  But I would say with regard to as it applies

3     to Mr. Gross, his role is very specific in the Indictment and I

4     think that we could work with defense counsel to indicate where

5     they should look for the evidence against Mr. Gross in

6     particular as it relates to the bribery payments.

7          THE COURT:  All right.  I think a status letter update

8     would be helpful.  I do want to and encourage you to seek

9     whatever resources you need from the Court to ensure that the

10    time is sufficient, which, as you've just heard, we're

11    balancing multiple needs with respect to the trial date.

12         I think, based on the time that's elapsed, what other

13    counsel have indicated -- Mr. Murgio's counsel has strongly

14    indicated a need for trial not to occur in October; as I've

15    just indicated, Mr. Lebedev's counsel obviously has indicated

16    that it could be done sooner than that -- I'm hopeful that

17    though you are in the case now, that the schedule will still

18    work so long as you pursue it aggressively.  And, again, I just

19    want to invite you to seek whatever resources you need from the

20    Court to assist you in that regard.

21         MS. SANTILLO:  Thank you, Judge.  Is there a

22    timeframe?

23         THE COURT:  What do you propose?

24         MS. SANTILLO:  30 days.  Is that too much or -- I

25    mean, that would give us a chance to unpack the evidence, work

G34dmurc

with the government to kind of pinpoint it, identify any issues

that might need to be raised, and to have a realistic

timeframe.

THE COURT:  I'm going to set two weeks as a date for a

status update and just try to incentivize a frontward push to

make sure that we can keep pushing it forward.

MS. SANTILLO:  Thank you.

THE COURT:  So I'll look for that in two weeks.  Thank

you.

All right.  Are there -- and to confirm the schedule

as it stands, October -- October 31st?

MS. CHOI:  Yes, your Honor.  I think that the

previously-set schedule by your Honor was that trial would be

October 31st, and from the prior order that your Honor issued

with regard to competing motions schedules, defense motions due

May 27th, the government's opposition due by June 24th, and the

defendants' reply due by July 8th.  You reserved a deadline on

motions in limine.  Also noted, if anyone wanted to file

earlier motions, there would be I think a 28-day opposition

then and thereafter replies.

THE COURT:  Thank you.  So I've set May 27th as the

current date for the filing of any initial motions based on

Rule 16 discovery and the like and have invited -- and set up a

schedule in light of that outside deadline, inviting counsel to

file earlier if you would like, and Mr. Lebedev's counsel had

G34dmurc

proposed an earlier schedule.  You are certainly welcome to

bring motions sooner, and the government will then be required

to oppose with the same set of time but by the earlier date and

I'll get to them promptly.  OK?

MR. KLEIN:  Judge, this is Brian Klein.

THE COURT:  Yes.

MR. KLEIN:  I have a question.

In the government's opposition to the severance

motion, they have (unintelligible) communicated my

(unintelligible) codefendant.  It might supersede with

additional charges and codefendants.  Obviously, only one new

codefendant was added now, and from our -- and we would want

know if the government plans to supersede again and add

additional defendants or other charges, because that could

affect the timing of the motions as well as the trial.

THE COURT:  All right.  Thank you.

Ms. Choi.

MS. CHOI:  Your Honor, the government's investigation,

as it always does, continues.  As of now, we're still

investigating these issues.  We're cognizant of the Court's

motions, and we're taking that into account with regard to our

charging decisions.

THE COURT:  All right.  It's going to be soon time to

cut off, I think, in light of the scheduling and the need to

continue on our trial date.

G34dmurc

1          MS. CHOI:  We understand that.

2          Just so he understands, with regard to Mr. Murgio,

3     whatever further charges we bring would be within the scope of

4     the discovery that's already been produced to him, so he would

5     not be prejudiced in that regard.

6          THE COURT:  All right.  Right.  I think the immediate

7     concern is if there are additional codefendants, it's going to

8     begin to -- we're close to the cutoff point at which it will

9     interfere with the schedule.

10          MR. KLEIN:  Your Honor --

11          THE COURT:  Go ahead.

12          MR. KLEIN:  -- if they brought additional charges,

13     we'd have to prepare those and we might want to file motions

14     related to those.  So there would be a prejudice in that sense,

15     among others.  So that's why we are asking the question,

16     because we have a motion deadline in a few months, and,

17     obviously, we anticipate filing motions related to what is in

18     front of us now.

19          THE COURT:  Right.  You would certainly be given an

20     opportunity to file any motions related to any new charges.

21     You won't be held to a deadline that you can't meet.  So we'll

22     make sure there is a reasonable schedule.  But I will ask the

23     government to -- I think a month -- is a month sufficient time,

24     Ms. Choi?

25          MS. CHOI:  One moment, your Honor.

G34dmurc

```
 1              (Pause)
 2              Your Honor, just because I am going to travel -- I
 3     will be traveling as well as Dan for work -- we would just ask
 4     for six weeks as the outside deadline.  We think we can do it
 5     quicker than that, but I don't want to hamper ourselves given
 6     our travel schedule.
 7              THE COURT:  All right.  Any Superseding Indictment
 8     within six weeks.
 9              MS. CHOI:  Thank you, your Honor.
10              THE COURT:  Yes.  Six weeks.  Thank you.
11              MR. NOBLE:  Judge, just to be clear, oftentimes the
12     government will supersede before trial within 30 days just as a
13     cleanup, to clean up an Indictment, not to bring new charges,
14     not to bring -- or not to add new defendants.  So the
15     government would reserve the right to supersede before trial to
16     do a cleanup, so to speak.
17              THE COURT:  Yes.  Leaving all of those terms
18     undefined, but, yes, I think we all know what we are talking
19     about, additional defendants, additional charges that change
20     the scope of the case in any way within six weeks.
21              MR. NOBLE:  Understood.
22              THE COURT:  Thank you.  All right.
23              Applications?  Any defense applications?
24              (Pause)
25              No.  Ms. Choi.
```

G34dmurc

 1          MS. CHOI:  Yes, your Honor.  The government would ask

 2     for an exclusion of time under the Speedy Trial Act, 18 U.S.C.

 3     3161, to the start of trial, October 31st, so that the parties

 4     can continue their negotiations with regard to any potential

 5     pretrial dispositions, so that additional discovery can be

 6     given to the defendants, and those defendants can review that

 7     discovery, and any motions can be filed, if necessary.

 8          THE COURT:  All right.

 9          MR. CREIZMAN:  Your Honor, on behalf of Mr. Lebedev,

10     we're going to object to the exclusion of time beyond the

11     earlier version of the motion schedule.  Once we file our

12     motions, I guess that would trigger the government's

13     opposition, then our time to reply, and we would oppose any

14     exclusion of time beyond that period.

15          THE COURT:  OK.  So you don't object, but can you

16     remind me of the dates that you proposed?

17          MR. CREIZMAN:  I don't know -- I understand that --

18          THE COURT:  Or --

19          MR. CREIZMAN:  -- until we file motions, meaning I

20     think that as a matter of law, the time between now and any

21     motions we file is probably excluded as a matter of law, and

22     then it is excluded probably until the motions are fully

23     briefed and maybe the Court decides that.  I haven't looked at

24     it for a couple of weeks.  But so my -- I mean, we would try to

25     have it in within two to three weeks, any pretrial motions, I

G34dmurc

1    think.

2            THE COURT:  OK.

3            MR. CREIZMAN:  So, you know, to the extent --

4            THE COURT:  You consent to the exclusion of time for

5    the purposes of the reviewing of discovery and preparing any

6    motions and filing those motions that you may bring but you

7    don't consent beyond that?

8            MR. CREIZMAN:  Correct.  Correct.  And, of course,

9    obviously with the Court's schedule, I think we have 28 days

10   for the government, but after that no.

11           THE COURT:  OK.

12           MR. CREIZMAN:  Thank you.

13           THE COURT:  Any other --

14           MR. SOLOWAY:  Your Honor, one quick thing, which is --

15   good afternoon.

16           THE COURT:  Good afternoon, Mr. Soloway.

17           MR. SOLOWAY:  I understand that the government has

18   made a representation that Mr. Murgio would be receiving

19   materials that were sort of related to Mr. Gross.  I just

20   wanted to be clear whether or not Mr. Murgio has in fact

21   received all the discovery, not anything new that lies out of

22   the new charges as to Mr. Gross, but anything that we haven't

23   received other than that particular --

24           THE COURT:  Right.  Understood.  So with the caveat

25   that they're going to provide some material that relates to

G34dmurc

```
 1    Mr. Gross not previously provided, otherwise is discovery
 2    completed?
 3             MR. SOLOWAY:  Otherwise is discovery completed as to
 4    Mr. Murgio, yes.  Thank you, Judge.
 5             MS. CHOI:  Yes, your Honor.  I believe that that is
 6    the case, except for the caveat with regard to the emails and
 7    the personal data that each of the codefendants now has but has
 8    not seen of the other codefendant.
 9             THE COURT:  Right.
10             MS. CHOI:  And also with the caveat that our
11    investigation is ongoing, so there are outstanding subpoenas
12    that we're still working our way through and we'll obviously be
13    producing them as they come.
14             THE COURT:  OK, Mr. Soloway?
15             MR. SOLOWAY:  Yes, Judge.  Thank you.
16             THE COURT:  The government's motion for exclusion of
17    time?
18             MR. SOLOWAY:  We have no objection to an exclusion of
19    time.
20             MS. SANTILLO:  No objection.
21             THE COURT:  All right.  Thank you.
22             I do find that the ends of justice served by granting
23    an exclusion from speedy trial computations for the period from
24    today's date through October 31, 2016, which I have set as a
25    firm trial date, outweigh the interests of the public and the
```

G34dmurc

defendants in a speedy trial.  This time is necessary for the

production and completion of production of discovery, which is

voluminous, review of that discovery by the defendants, time

for the defendants to consider if there are any available

motions and, if so, preparing any such motions, time for the

parties to consider any negotiations towards a disposition of

the case, in the absence of that, time for the parties to

prepare for trial.

Counsel, anything else that I can address at this

time?

MS. CHOI:  Not from the government, your Honor.

MR. SOLOWAY:  No, your Honor.

MR. CREIZMAN:  No, your Honor.  Thank you.

THE COURT:  Mr. Klein?

MR. KLEIN:  No, your Honor.

MS. SANTILLO:  No, your Honor.

THE COURT:  Thank you, everyone.  We are adjourned.

THE CLERK:  All rise.

THE COURT:  I apologize.  Just a moment.

We don't have another status conference set, but if

there is a request for one, just put it in.  If I think one is

needed in light of anything that's brought to my attention,

I'll set one.

So, you know, it is my practice after the motion

deadline -- the initial motion deadline that I've set is

G34dmurc

1     completed and either no motions are filed or I've resolved

2     motions, I then put out a schedule for the remainder of the

3     case, setting a final pretrial conference as well as a schedule

4     for in limine and 404(b) motions, proposed voir dire and jury

5     instructions and the like.  So that's what lies ahead.

6                Thank you.  We are adjourned.  Have a good weekend.

7                MS. CHOI:  Thank you, your Honor.

8

9                                   -   -   -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25