UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA      :          S3 15 Cr. 769 (AJN)

    - against -             :

ANTHONY MURGIO,            :

            Defendant.       :

-------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANTHONY MURGIO'S
MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT**

BRIAN E. KLEIN
BAKER MARQUART LLP
2029 Century Park East, Suite 1600
Los Angeles, California 90067
(424) 652-7800

ROBERT A. SOLOWAY
ROTHMAN, SCHNEIDER,
SOLOWAY & STERN, LLP
100 Lafayette Street
New York, New York 10013
(212) 571-5500

*Attorneys for Anthony Murgio*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

    1. Counts One and Two: The 18 U.S.C. § 1960 Charges ........................................... 1

    2. The Allegations Regarding Coin.mx Operating as a Bitcoin Exchange and Bitcoins ......... 4

STANDARD OF REVIEW ................................................................................................. 5

ARGUMENT ....................................................................................................................... 6

    1. Bitcoins Are Not "Money" or "Funds" ................................................................ 6

        a. 18 U.S.C. § 1960 .......................................................................................... 6

        b. The Florida Law the Government Relies On for 18 U.S.C. § 1960(b)(1)(A) Does Not Encompass Bitcoins .............................................................. 12

    2. The Indictment Fails to Allege that Anthony Murgio Operated a "Money Transmitting Business" or Engaged in "Money Transmitting" ................................ 14

        a. Anthony Murgio Did Not Operate a Money Transmitting Business Under § 1960 .... 14

            i. A Seller of Bitcoins Does Not Meet the Definition of a Money Transmitter ........ 15

            ii. The Second Circuit Recognizes that Operating a Money Transmitting Business Requires the Transmission of Money to a Third-Party or Location .................... 17

            iii. The Government's Proposed Reading of 18 U.S.C. § 1960 Raises Serious Constitutional Issues ........................................................ 19

        b. Murgio Did Not Operate a Money Transmitting Business Under Florida Law .......... 22

CONCLUSION ................................................................................................................... 23

## TABLE OF AUTHORITIES

### Cases

Arthur Andersen LLP v. United States, 544 U.S. 696 (2005) ..................................................... 12

Bouie v. City of Columbia, 378 U.S. 347 (1964) .................................................................. 19, 20

City of Chicago v. Morales, 527 U.S. 41 (1999) ........................................................................ 11

Clines v. State, 912 So. 2d 550 (Fla. 2005) ............................................................................... 14

Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So. 2d 911 (Fla. 1995) ................................ 13

NAACP v. Button, 371 U.S. 415 (1963) ..................................................................................... 21

People v. Gilbert, 414 Mich. 191, 324 N.W.2d 834 (1982) ........................................................ 22

Rewis v. United States, 401 U.S. 808 (1971) .............................................................................. 11

Richards v. United States, 369 U.S. 1 (1962) ............................................................................. 11

SEC v. Rosenthal, 650 F.3d 156 (2d Cir. 2011) ........................................................................... 8

State v. Byars, 823 So.2d 740 (Fla. 2002) .................................................................................. 14

Troll Co. v. Uneeda Doll Co., 483 F.3d 150 (2d. Cir. 2007) ........................................................ 8

United States ex rel. Attorney General v. Del. & Hudson Co., 213 U.S. 366 (1909) .................. 11

United States v. Ali, 2008 WL 4773422 (E.D.N.Y. Oct. 27, 2008) ............................................ 21

United States v. Ali, 561 F. Supp. 2d 269 (E.D.N.Y. 2008) ......................................................... 6

United States v. Bah, 574 F.3d 106 (2d Cir. 2009) ..................................................................... 17

United States v. Banki, 685 F.3d 99 (2d Cir. 2012), as amended (Feb. 22, 2012) ...................... 17

United States v. Budovsky, 2015 WL 5602853 (S.D.N.Y. Sept. 23, 2015) ............... 12, 14, 15, 21

United States v. E-Gold, Ltd., 550 F. Supp. 2d 82 (D.D.C. 2008) .............................................. 18

United States v. Elfgeeh, 515 F.3d 100 (2d Cir. 2008) ............................................................... 17

United States v. Elfgeeh, 2004 WL 3767299 (E.D.N.Y. Apr. 13, 2004) .................................... 20

United States v. Faiella, 39 F.Supp.3d 544 (S.D.N.Y. 2014) ........................................... 12, 19, 21

United States v. Ford, 435 F.3d 204 (2d Cir. 2006) ............................................................ 11

United States v. Gotti, 457 F.Supp.2d 411 (S.D.N.Y. 2006) ............................................. 6

United States v. Mazza-Alaluf, 607 F. Supp. 2d 484 (S.D.N.Y. 2009) ............................. 20

United States v. Thompson, 281 F.3d 1088 (10th Cir. 2002) ............................................. 22

United States v. Ulbricht, 31 F.Supp.3d 540 (S.D.N.Y. 2014) ......................................... 12

United States v. Velastegui, 199 F.3d 590 (2d Cir. 1999) .......................................... 18, 20

## Constitutional Provisions

U.S. Const. art. I, §8, cl.5 ................................................................................................. 10

## Other Authorities

Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual
    Currencies, FIN-2013-G001 (Mar. 18, 2013) ..........................................................8-10, 16, 19

Black's Law Dictionary (10th ed. 2014) ………………………………………………..7, 8

H.R. Rep. No. 107-250(I) (2001) ....................................................................................... 9

How do Bitcoin Transactions Work?, Coindesk, Last updated March 20, 2015 ............................ 5

Internal Revenue Service, Notice 2014-21 ........................................................... 10, 11

Stephen T. Middlebrook & Sarah Jane Hughes, Regulating Cryptocurrencies in the United
    States: Current Issues and Future Directions, 40 Wm. Mitchell L. Rev. 813, 818 (2014) ......... 5

## Regulations

31 C.F.R. § 1010.100(ff)(5)(ii)(F) ................................................................................... 15

31 C.F.R. § 1010.100(m) ................................................................................................. 10

31 C.F.R. § 1010.100(ww) ................................................................................................. 9

## Rules

Fed. R. Crim. P. 12(b)(1) .................................................................................................. 5

Fed. R. Crim. P. 12(b)(3)(B)(v) ........................................................................................ 5

Fed. R. Crim. P. 12 ............................................................................................... 1, 5

**Statutes**

18 U.S.C. § 1030(a)(7)........................................................................................... 3

18 U.S.C. § 1956 .................................................................................................. 9

18 U.S.C. § 1956(a)(2)(A) .................................................................................... 6

18 U.S.C. § 1956(c)(2)........................................................................................... 9

18 U.S.C. § 1956(h) .............................................................................................. 6

18 U.S.C. § 1960 ......................................................................................... passim

18 U.S.C. § 1960(b)(1)(A) ........................................................................ 2, 3, 12, 14

18 U.S.C. § 1960(b)(1)(B) ........................................................................... 2, 3

18 U.S.C. § 1960(b)(1)(C) ........................................................................ 2, 3, 12

31 U.S.C. § 5330 .................................................................................... 2, 3, 15

Fla. Stat. Ann. § 560.103(11)............................................................................ 13

Fla. Stat. Ann. § 560.103(21)............................................................................ 13

Fla. Stat. Ann. § 560.103(22)............................................................................ 12

Fla. Stat. Ann. § 560.103(23)....................................................................... 13, 22

Fla. Stat. Ann. § 560.103(29)............................................................................ 13

Fla. Stat. Ann. § 560.125 .................................................................... 3, 12, 13, 22

Fla. Stat. Ann. § 560.125(1)............................................................................... 14

Fla. Stat. Ann. § 775.021(1)............................................................................... 14

UCC § 1-201(b)(24)............................................................................................. 7

## INTRODUCTION

The Court should dismiss Counts One and Two of the Indictment against defendant Anthony Murgio, which charge violations of 18 U.S.C. § 1960 (Prohibition of Unlicensed Money Transmitting Businesses), since they fail to state an offense as required by Rule 12 of the Federal Rules of Criminal Procedure.

In connection with these counts, the government alleges that Murgio operated the unlicensed bitcoin exchange Coin.mx.  Pursuant to § 1960, a person can only be found guilty if what he or she "transmits" is "money" (or "funds").  But for the purposes of § 1960, bitcoins are not "money" (or "funds"), and a bitcoin exchange does not "transmit" money.

Murgio, a young, college-educated entrepreneur with no criminal history, is not asking the Court to place him beyond the reach of the law.  The federal statute he is charged with violating, § 1960, is simply inappropriately and defectively charged here for a number of reasons, all of which are discussed in detail below.  The government has overreached, and nothing it argues to the contrary can change that.

Accordingly, the Court should dismiss Counts One and Two.

## BACKGROUND

### 1.  Counts One and Two: The 18 U.S.C. § 1960 Charges

The Indictment, filed on April 21, 2016, charges Murgio with two 18 U.S.C. § 1960 violations, among its nine counts.[1]  Those charges are found in Counts One and Two, and there Murgio is charged with conspiracy to operate an unlicensed money transmitting

---

[1] The original November 5, 2015 indictment in this matter has been superseded twice.  It was superseded by the S-2 indictment, unsealed March 3, 2016, and by the S-3 indictment, unsealed April 21, 2016.  The latter, the S-3 indictment, is the indictment referenced in this motion unless otherwise noted.

business (Count One) and with operating an unlicensed money transmitting business (Count

Two).  (S-3 Indictment ¶¶ 1-15; Dkt. No 87.)

      Section 1960, which was first adopted in 1992 (over a decade before bitcoins were

first conceived), starts out by stating in subsection (a):

> Whoever knowingly conducts, controls, manages, supervises, directs,
> or owns all or part of an <u>unlicensed money transmitting business</u>,
> shall be fined in accordance with this title or imprisoned not more
> than 5 years, or both.

(Emphasis added.)  § 1960 concludes by stating in subsection (b), in pertinent part:

> (1) the term "<u>unlicensed money transmitting business</u>" means a
> money transmitting business which affects interstate or foreign
> commerce in any manner or degree <u>and</u>—
>
>     (A) is operated without an appropriate money transmitting
> license in a State where such operation is punishable as a misdemeanor
> or a felony under State law, whether or not the defendant knew that
> the operation was required to be licensed or that the operation was
> so punishable;
>
>     (B) fails to comply with the money transmitting business
> registration requirements under section 5330 of title 31, United States
> Code, or regulations prescribed under such section; <u>or</u>
>
>     (C) otherwise involves the transportation or transmission of
> funds that are known to the defendant to have been derived from a
> criminal offense or are intended to be used to promote or support
> unlawful activity;
>
> (2) the term "<u>money transmitting</u>" includes transferring funds on
> behalf of the public by any and all means including but not limited to
> transfers within this country or to locations abroad by wire, check,
> draft, facsimile, or courier;

(Emphasis added.)

      The Indictment claims Coin.mx was an unlicensed money transmitting business

because its operations allegedly affected interstate and foreign commerce, and it allegedly

violated § 1960(b)(1)(A)-(C).  (<u>Id.</u> ¶¶ 12, 15.)  With regard to the latter, Coin.mx allegedly, in

short, did not have a state license (§ 1960(b)(1)(A)), failed to comply with specific federal regulations (§ 1960(b)(1)(B)), and was involved the transmission of criminally derived funds (§ 1960(b)(1)(C)).

The state licensing and transmission of criminally derived funds allegations were added to the latest superseding indictment. The two earlier indictments did not contain these allegations.

With regard to the alleged lack of a state license, (b)(1)(A), the Indictment states that the applicable state is "Florida" and then only adds "where such operation is punishable as a misdemeanor and a felony under State law," without providing any specific citations to Florida statutes. (Id. ¶¶ 12, 15) As a result of this lack of specificity, the defense had to send the government a demand for particulars on May 10, 2016, requesting the specific Florida statutes it claimed Murgio violated. On June 1, 2016, the government responded by stating:

> The relevant Florida state statutes governing licensing requirements for money service businesses operating in that state are set forth in Chapter 560 of the Florida Statutes. Section 560.125 sets forth the relevant penalties for operating an unlicensed money transmitting business.

The government did not provide any additional information in connection with the defense's demand for particulars.

As for the federal regulatory component, (b)(1)(B), the Indictment states those are the "requirements set forth in Title 31, United States Code, Section 5330, and the regulations proscribed thereunder." (Id.)

And lastly in connection with the alleged transmission of criminally derived funds, (b)(1)(C), the Indictment claims those funds are tied to extortion in furtherance of ransomware schemes, in violation of 18 U.S.C. § 1030(a)(7). (Id.) But it provides no further

(and necessary) details.  This lack of required specificity is, in part, the subject of Murgio's

pending motion to compel, filed on June 13, 2016.  (See Dkt. Nos. 125-26 and 128.)

### 2.   The Allegations Regarding Coin.mx Operating as a Bitcoin Exchange and Bitcoins

The Indictment alleges that Coin.mx "was a Florida-based bitcoin exchange service

on the Internet . . ." and was operated by Murgio, with the help of others, from approximately

April 2013 to July 2015.  (Indictment ¶¶ 3, 11.)  According to the government, Coin.mx was

owned by Gery Shalon, who is charged in a separate and ongoing multi-defendant case in the

Southern District of New York, United States v. Shalon, 15 cr. 333 (LTS), although it is the

defense's understanding that he is identified as an uncharged co-conspirator in the

Indictment.  (See Indictment ¶ 3.)   Coin.mx allegedly "enabled customers to exchange cash

for [b]itcoins, charging a fee for [its] service."  (Id. ¶ 3.)

The Indictment does not include any specific allegations regarding Coin.mx (or

Murgio) transmitting bitcoins on behalf of its purported purchasing customers to anyone else

or anywhere else.[2]

In addition, the Indictment does not define bitcoins or discuss what they are.  But the

government's criminal complaint against Murgio claims:

> Bitcoins are an anonymous, decentralized form of electronic
> currency that exists entirely on the Internet and not in any physical
> form.  Bitcoins are not illegal in and of themselves and have
> known legitimate uses.

(Compl. ¶ 11(a); Dkt. No. 1.)  Not only are bitcoins themselves legal, but so is the purchase,

sale, and exchange of them.  The value of a unit of bitcoin (they are divisible down to eight

---

[2] The Indictment's ransomware related allegations (e.g., ¶ 9) do not change this fact – they simply allege that Coin.mx, Murgio, and his alleged co-conspirators permitted victims to exchange currency for bitcoins.

decimal places) is determined solely by the actions of private market participants.  Not only

do bitcoins not have any physical form, "[y]ou cannot point . . . [to] even a digital file, and

say 'this is a bitcoin.'"  How do Bitcoin Transactions Work?, Coindesk, Last updated March

20, 2015, available at www.coindesk.com/information/how-do-bitcoin-transactions-work/.

Bitcoins only record transactions between different addresses on the bitcoin network, with

balances that increase and decrease.  Id.  And in addition to being decentralized, bitcoins are

not backed by any government, including the United States government, and they are not

directly regulated by any specific federal agency here in the United States.

     For purposes here, bitcoins are a privately created commodity, acquired – or "mined"

– by solving mathematical problems generated by a software algorithm.  See Stephen T.

Middlebrook & Sarah Jane Hughes, Regulating Cryptocurrencies in the United States:

Current Issues and Future Directions, 40 Wm. Mitchell L. Rev. 813, 818 (2014) (footnote

omitted).  Like any commodity and unlike any currency, there is a limited supply, which in

the case of bitcoins is 21 million.  Bitcoins are, in essence, digital gold.[3]  And to this end, the

United States Commodity Futures Trading Commission, which regulates commodities like

actual gold, issued an order on September 17, 2015, finding that bitcoins are a commodity

covered by the Commodity Exchange Act.  (Ex. A at 3.)

### STANDARD OF REVIEW

     A defendant may seek to dismiss an indictment that fails to state an offense.  Fed. R.

Crim. P. 12(b)(1) and (b)(3)(B)(v).  And a trial court must accept an indictment's factual

---

[3] Like actual gold, bitcoins are "mined," of finite supply, easily divisible, and counterfeits are detectable.

allegations as true when considering such a challenge to an indictment.  United States v. Gotti, 457 F.Supp.2d 411, 421 (S.D.N.Y. 2006).

## ARGUMENT

Counts One and Two, which charge violations of 18 U.S.C. § 1960, should be dismissed pursuant to Rule 12 of the Federal Rules of Criminal Procedure because they fail to state an offense.[4]  Namely, they fail to allege conduct that meets the definition of "money transmitting" as required under § 1960.  The Indictment only alleges Coin.mx "enabled customers to exchange cash for Bitcoins, charging a fee for [its] service."  (Indictment ¶ 3.) But bitcoins are not "money" (or "funds") here and selling them to customers for cash, as alleged in the Indictment, is not "transmitting."

### 1.  Bitcoins Are Not "Money" or "Funds"

#### a.  18 U.S.C. § 1960

A defendant can only be found guilty under § 1960 only where the object he or she "transmits" is "money" (or "funds").  § 1960 defines money transmitting to mean:

> transferring funds on behalf of the public by any and all means
> including but not limited to transfers within this country or to locations
> abroad by wire, check, draft, facsimile, or courier

But the statute does not define either "money" or "funds."  See United States v. Ali, 561 F. Supp. 2d 269, 272 (E.D.N.Y. 2008) ("[B]oth the federal statute and the entirety of New York's Banking Law lack a definition for the term "money.'").

---

[4] To the extent the dismissal of Counts One and Two undermines other counts, such as Counts Eight (Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h)) and Nine (Money Laundering – 18 U.S.C. §§ 1956(a)(2)(A) and 2), those counts should also be dismissed.

When § 1960 was enacted in 1992, Congress could not have contemplated its application to bitcoin, which only came into existence with its release in January 2009.  And Congress has not amended it since that time to encompass bitcoins.

At the outset, it should be noted that the Indictment does not define bitcoins.  As such, bitcoins should be read to not be "money" or "funds."  To the extent the government argues that the Court should use the definition found in the criminal complaint, which is electronic currency, bitcoins are still not "money" or "funds."

"Money" and "funds" under § 1960 mean "currency," and only that.  The terms "money" and "funds" are nearly coextensive under a fair reading of Black's Law Dictionary and broadly mean convertible assets.  Black's defines "funds" to mean "[a] sum of money or other liquid assets established for a specific purpose."  788 (10th ed. 2014).  As for "money," Black's defines it two primary ways: broadly, as "[a]ssets that can be easily converted to cash," and narrowly, as "[t]he medium of exchange authorized or adopted by a government as part of its currency; esp. domestic currency."  Id. at 1158.

Black's narrow definition of "money" is taken from the Uniform Commercial Code's definition, which is:

> [A] medium of exchange currently authorized or adopted by a domestic or foreign government.  The term includes a monetary unit of account established by an intergovernmental organization or by agreement between two or more countries.

UCC § 1-201(b)(24) (General Definitions).

The broad definition of money – convertible assets – cannot be applied to § 1960 without rendering it meaningless and overly broad.  This is because it could encompass the business of moving almost any item and opens the door to felony charges to all sorts of

transfers that Congress would never have intended to be prosecuted.  It is well established

that statutes are to be interpreted narrowly to avoid illogical results.  See Troll Co. v. Uneeda

Doll Co., 483 F.3d 150, 160 (2d. Cir. 2007) (rejecting interpretation of a statute that would

render it "absurdly broad").  For this reason, the broad definition of money cannot be applied

to § 1960.

       The government can be expected to rely on Black's definition of the term "funds" and

argue that it is a flexible one, encompassing any liquid form of value that can substitute for cash

and should be used here.  But that definition – "[a] sum of money or other liquid assets

established for a specific purpose" – cannot be correct because it would apply to many assets

that are not within the purview of § 1960.  For example, the transfer of commodities traded

on an exchange – such as copper, oil, wheat, soybeans, hogs, cotton, orange juice, coffee, or

lumber – would fit that definition and the transfer of such liquid assets could be subject to the

money transmitter statute.  If that were the case, § 1960 would become an absurdity, and thus

it cannot be so interpreted.  See Troll Co., 483 F.3d at 160 (2d Cir. 2007) (rejecting

interpretation of a statute that would render it "absurdly broad"); accord SEC v. Rosenthal,

650 F.3d 156, 162 (2d Cir. 2011) (observing that "[i]t is, to be sure, well-established that '[a]

statute should be interpreted in a way that avoids absurd results,'" and rejecting the

government's construction of criminal statute that would result in overbreadth).

       Reliance on Black's definition of "funds" here is also undercut by the Financial

Crimes Enforcement Network's view of what constitutes "funds."  (FinCEN, as it is known,

is the agency of the United States Department of the Treasury that exercises regulatory

functions over § 1960.)  In FinCEN's guidance on virtual currencies, "prepaid access" is

defined as access to "funds" or the value of "funds," and it is limited to real currencies.  See

Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies, FIN-2013-G001 at 5, (Mar. 18, 2013) ("FinCEN Guidance") (Ex. B at 5); 31 C.F.R. § 1010.100(ww).  But bitcoins are indisputably not "real currencies."  Therefore, bitcoins are not "funds," even in FinCEN's view.

The narrow definition of "money," and the one used for commercial contracts like those alleged in the Indictment – currency – applies a natural and appropriate limitation on §1960.  The legislative history of § 1960 is not instructive because, as was noted above, when it was enacted in 1992, Congress could not have contemplated its application to bitcoins (they did not even exist), and the term "money" as used in the statute would likely have been synonymous with the term "currency."  The law was designed to stop the movement of money tied to drug dealing, not other things.  See H.R. Rep. No. 107-250(I), at 54 (2001).  After all, it is well-known that drug dealers purchase objects and commodities (e.g., high-end cars) to launder the proceeds of drug sales, and § 1960 indisputably does not cover them.

In fact, § 1960's purpose – to ensure those who transmit money for a business register with the federal government, obtain state licenses, and submit to applicable regulations – seems appropriately directed to those who transmit currency.  Had Congress wanted the term "money" to be defined expansively to include bitcoins, it would have addressed the issue once the existence of bitcoin became known.  Indeed, states have done so (e.g., New York's Bitlicense).  The federal money laundering statute, 18 U.S.C. § 1956, is additional proof of this.  Rather than relying on an expansive definition of "money," it expressly and broadly applies to, among other things, certain "financial transactions involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity."  See 18 U.S.C. § 1956(c)(2).

9

Moreover, the federal government has an obvious and substantial interest in currency. After all, it issues its own currency, and it regulates its value through monetary policy.  See generally U.S. Const. art. I, §8, cl.5 (bestowing on the legislature the power "[t]o coin [m]oney, [and] regulate the [v]alue thereof.").

In contrast, bitcoins are not directly regulated by the federal government or subject to monetary policy, and the federal government only relatively recently, in March 2013, expressed an interest in seeing the registration and licensing of those who engage in certain transactions involving bitcoins.  See FinCEN Guidance (Ex. B).

The federal government also recognizes significant differences between "currency" and bitcoins, and defines "currency" as:

> The coin and paper money of the United States or of any other country that is designated as legal tender and that circulates and is customarily used and accepted as a medium of exchange in the country of issuance. Currency includes U.S. silver certificates, U.S. notes and Federal Reserve notes. Currency also includes official foreign bank notes that are customarily used and accepted as a medium of exchange in a foreign country.

31 C.F.R. § 1010.100(m)(2013).  It is indisputable that bitcoins do not meet this definition.

FinCEN further distinguishes "currency" (also referred to as "real currency") from "virtual currency," which includes bitcoins (in FinCEN's eyes) and which FinCEN defines as "a medium of exchange that operates like a currency in some environments, but does not have all of the attributes of real currency."  See FinCEN Guidance (Ex. B at 1).  FinCEN notes in particular that "virtual currency does not have legal tender status in any jurisdiction."  Id.

The significant differences between "currency" and bitcoins are further recognized by the United States Internal Revenue Service.  The IRS does not treat bitcoin as "currency" for the purposes of taxation; it treats it as property.  See Internal Revenue Service, Notice 2014-

21, available at http://www.irs.gov/pub/irs-drop/n-14-21.pdf.  And this is consistent with the

CFTC's September 17, 2015 order finding that bitcoins are a commodity covered by the

Commodity Exchange Act.  (See Ex. A at 3.)

Interpreting the terms "money" or "funds" under §1960 to include a commodity like

bitcoins raises concerns that the statute fails to "provide the kind of notice that will enable

ordinary people to understand what conduct it prohibits."  City of Chicago v. Morales, 527

U.S. 41, 56 (1999).  The ordinary understanding of "money" and "funds" is consistent with

the definition offered above and does not include bitcoins.  See Richards v. United States, 369

U.S. 1, 9 (1962) ("[T]he legislative purpose is expressed by the ordinary meaning of the

words used.").  It also does not include cars, real estate, baseball cards, bitcoins, or other

assets that, although valuable and potentially even a medium of exchange, do not fall within

the ordinary understanding of the terms "money" or "funds."

The Supreme Court has instructed courts, when confronted with a statute of

ambiguous and potentially infinite reach, to interpret it consistent with the rule of lenity and

the doctrine of constitutional avoidance.[5]  Courts should:

> [E]xercise[] restraint in assessing the reach of a federal criminal statute,
> both out of deference to the prerogatives of Congress, and out of concern
> that a fair warning should be given to the world in language that the

---

[5] The rule of lenity states that when a criminal statute can have two different interpretations—one more and one less favorable to the defendant—"leniency" requires that a court interpret it in the favorable manner.  See Rewis v. United States, 401 U.S. 808, 812 (1971); United States v. Ford, 435 F.3d 204, 211 (2d Cir.2006) (citation omitted) (explaining that "restraint must be exercised in defining the breadth of the conduct prohibited by a federal criminal statute out of concerns regarding both the prerogatives of Congress and the need to give fair warning to those whose conduct is affected").  Under the doctrine of constitutional avoidance when a "statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [a court's] duty is to adopt the latter."  United States ex rel. Attorney General v. Del. & Hudson Co., 213 U.S. 366, 408 (1909) (citation omitted).

11

common world will understand, of what the law intends to do if a certain
line is passed.

Arthur Andersen LLP v. United States, 544 U.S. 696, 703 (2005) (citations omitted).  Here,

the statutory terms "money" and "funds" can either be given the ordinary meaning or they

can be given a meaning so broad as to have no meaning at all.  The latter is what the

government proposes through its §1960 charges.

In sum, the Court should rule consistent with plain meaning and fair warning, finding

that the Indictment fails to allege a transaction in "money" or "funds" and therefore fails to

state an offense under § 1960 in Counts One and Two.[6] [7]

### b. The Florida Law On Which the Government Relies for 18 U.S.C. § 1960(b)(1)(A) Does Not Encompass Bitcoins

As noted above, with regard to the alleged lack of a state license, § 1960(b)(1)(A), the

government contends that Coin.mx violated Chapter 560 of the Florida Statutes (Money

Service Businesses) and that § 560.125 sets forth the relevant penalties for operating an

unlicensed money transmitting business.

Bitcoins, however, do not fall under the ambit of Chapter 560.  A money service

business can only be one of four things in Florida: "a payment instrument seller, foreign

currency exchanger, check casher, or money transmitter."  Fla. Sta. Ann. § 560.103(22).  And

a money transmitter is defined, in pertinent part, as "a corporation . . . qualified to do business

---

[6] But see United States v. Faiella, 39 F.Supp.3d 544, 545 (S.D.N.Y. 2014) (holding that
bitcoins qualified as "money" or "funds"); see also United States v. Budovsky, 2015 WL
5602853, at *14 (S.D.N.Y. Sept. 23, 2015) (holding that virtual currencies like LR are
"funds"); accord United States v. Ulbricht, 31 F.Supp.3d 540, 569-70 (S.D.N.Y. 2014)
(holding that bitcoins are "funds" for the purposes of a money laundering conspiracy charge).
[7] The term "criminal offense" in § 1960(b)(1)(C) is also overly broad.  After all, it could
capture infractions and misdemeanors, which is undoubtedly not the intent of the statute
whose penalties make it a felony statute.

in [Florida] which receives <u>currency</u>, <u>monetary value</u>, or <u>payment instruments</u> for the purpose

of transmitting <u>the same</u> by any means, . . ."  Fla. Stat. Ann. § 560.103(23) (emphasis added).

Bitcoins are none of those three things under Chapter 560, not currency, not monetary

value, and not payment instruments.  "Currency" is defined under Florida law as:

> [T]he coin and paper money of the United States or of any other
> country which is designated as legal tender and which circulates
> and is customarily used and accepted as a medium of exchange in
> the country of issuance.  Currency includes United States silver
> certificates, United States notes, and Federal Reserve notes.
> Currency also includes official foreign bank notes that are
> customarily used and accepted as a medium of exchange in a
> foreign country.

Fla. Stat. Ann. § 560.103(11).  Bitcoins are most certainly not "the coin and paper money" of

any country, including the United States.  Moreover, bitcoins are also not "monetary value,"

nor are they a "payment instrument," since, for among other reasons, neither definition under

Chapter 560 is precise enough to hold anyone criminally liable (per the rule of lenity

discussed below in detail).[8]  Thus, bitcoins are not covered by applicable Florida laws.  <u>See</u>

<u>Leisure Resorts, Inc. v. Frank J. Rooney, Inc.</u>, 654 So. 2d 911, 914 (Fla. 1995) ("When the

legislature has used a term, as it has here, in one section of the statute but omits it in another

section of the same statute, we will not imply it where it has been excluded.").

It may be that Florida will adopt statutes regulating bitcoins.  But until that time, it is

unjust to take an ambiguous criminal statute, such as § 560.125, and force its application when

that application is uncertain at best.  Under the present circumstances, the rule of lenity should

---

[8] "Monetary value" is defined as "a medium of exchange, whether or not redeemable in
currency."  Fla. Stat. Ann. § 560.103(21).  "Payment instrument" is defined as "a check,
draft, warrant, money order, travelers check, electronic instrument, or other instrument,
payment of money, or monetary value whether or not negotiable.  The term does not include
an instrument that is redeemable by the issuer in merchandise or service, a credit card
voucher, or a letter of credit."  Fla. Stat. Ann. § 560.103(29).

bar a finding that Murgio was an unauthorized money transmitter under § 560.125(1) and thus in

violation of § 1960(b)(1)(A).  See, e.g., Fla. Stat. Ann. § 775.021(1) ("The provisions of this

code and offenses defined by other statutes shall be strictly construed; when the language is

susceptible of differing constructions, it shall be construed most favorably to the accused.");

leisure v. State, 912 So. 2d 550, 560 (Fla. 2005) ("Because [the statute] generates differing

reasonable constructions, we endorse the construction that favors the defendant . . . ."); State v.

Byars, 823 So.2d 740, 742 (Fla. 2002) ("[A]ny ambiguity or situations in which statutory

language is susceptible to differing constructions must be resolved in favor of the person charged

with an offense.").

### 2. The Indictment Fails to Allege that Anthony Murgio Operated a "Money Transmitting Business" or Engaged in "Money Transmitting"

Counts One and Two should also be dismissed because the Indictment fails to allege that

Murgio operated a "money transmitting business" or engaged in "money transmitting" as

contemplated by § 1960 (and the Florida statutes on which the government relies).[9]

### a. Anthony Murgio Did Not Operate a Money Transmitting Business Under §1960

Section 1960 prohibits the unlicensed operation of a "money transmitting business."  The

use of the term "business" in the statute clearly requires that a defendant sell money transmitting

services to others for a profit.  Here, the Indictment fails to allege that Coin.mx, or Murgio (its

alleged operator) sold such services.  Instead, Coin.mx is alleged to have sold bitcoins for a fee

to customers who sought it out as a source of bitcoins.  (See Indictment ¶ 3.)  There are no

---

[9] But see Faiella, 39 F.Supp.3d 544 (S.D.N.Y. 2014) (holding that the defendant's bitcoin-related activities qualified as a money transmission) see also Budovsky, 2015 WL 5602(S.D.N.Y. Sept. 23, 2015) (holding that defendant's foreign-located business, which used the virtual currency LR that had a dollar-to-LR equivalence and was used as a currency substitute, was required to register).

allegations that customers asked Coin.mx, Murgio, or anyone else to transmit bitcoins to other

locations or persons, nor are there any allegations regarding how any of the allegedly sold

bitcoins were secured.  Rather, the relevant allegation is simply that customers paid Coin.mx to

provide them with bitcoins.

> ### i. A Seller of Bitcoins Does Not Meet the Definition of a Money Transmitter

The Indictment alleges that Murgio acted as a money transmitter by operating the

alleged bitcoin exchange Coin.mx.  A seller of bitcoins, however, is not included within

§ 1960's definition of "money transmitter."  Indeed, such conduct is expressly excluded.  The

regulations provide, in relevant part:

> (5) Money transmitter—(i) In general. (A) A person that provides
> money transmission services. The term 'money transmission
> services' means the acceptance of currency, funds, or other value
> that substitutes for currency from one person and the transmission
> of currency, funds, or other value that substitutes for currency to
> another location or person by any means. . . .

31 C.F.R. § 1010.100(ff)(5)(ii)(F) (2013) (emphasis in original).[10]  Here, as noted above, the

Indictment alleges only that Coin.mx sold bitcoins to customers.  There are no allegations that

Coin.mx transmitted bitcoins to another location or person for its customers.  Thus, Coin.mx

---

[10] The Indictment fails to provide a specific reference to any C.F.R. provision, let alone
C.F.R. § 1010.100(ff)(5)(ii)(F).  Rather, it references, "Title 31, United States Code, Section
5330, and the regulations prescribed thereunder," without identify specific implementing
regulations.  (Indictment ¶ ¶ 12, 15.)  In Budovsky, the court found the indictment was
alleged sufficiently because it identified the precise C.F.R.  regulations, not simply § 5330.
2015 WL 5602853, at *8 (S.D.N.Y. Sept. 23, 2015) ("Against this backdrop, an indictment
need only allege a violation of § 5330's implementing regulations to sufficiently allege a
violation of [] § 1960[].  Here, the Indictment identified two such regulations: §§
1010.100(ff)(5) and 1022.380(a)(2) . . .").  Since that is not the case here, this provides an
independent ground to dismiss the Indictment. A bill of particulars cannot save the Indictment
in this regard or with regard to the other challenges raised above because, for among other
reasons, there is no indication that the grand jury properly understood matters.

15

is not a money transmitter.  To read the "money transmission" statute otherwise would mean that most two-party transactions where a recipient accepts funds from a payer, and then "transmits" them to "another location," namely, the recipient's own account, would be "money transmission."

Moreover, there are no allegations that the bitcoins purportedly sold here were anything other than Coin.mx's own bitcoins, not those of a third-party who was also using the alleged exchange.  This further supports the argument that Coin.mx (and Murgio, as an alleged operator) is not a money transmitter, since it only engaged in two-party transactions.

Even if Coin.mx was matching buyers with sellers (which the defense does not concede and is not how all exchanges are run), this does not make it a money transmitter. This is because, in that case, Coin.mx would not have taken custody of any bitcoins, so it could not have transmitted them.

The government can be expected to argue that the FinCEN Guidance makes Coin.mx a money transmitter for the purposes of § 1960.  But whether FinCEN (or, as discussed below, Florida) considers Coin.mx's alleged activities money transmissions is irrelevant if the § 1960 "money transmitting" definition is not met.  And that is the case here.  Further, the Court should reject this expected line of government argument because the FinCEN Guidance has a number of significant problems, including the fact that it is not well developed, is contradicted by other regulations, and has not been applied consistently by FinCEN.

Overall, Coin.mx does not qualify as a money transmitter under § 1960.

16

ii. <u>The Second Circuit Recognizes that Operating a Money Transmitting Business Requires the Transmission of Money to a Third-Party or Location</u>

For similar reasons, Second Circuit law supports the assertion that Murgio did not operate a money transmitting business under §1960, since Coin.mx did not, nor was it instructed by its alleged customers to, transfer money to a third-party or location.

A traditional money transmitting business "operates in a similar fashion to a Western Union business." <u>United States v. Elfgeeh</u>, 515 F.3d 100, 108 (2d Cir. 2008) (quoting testimony of an FBI agent). A critical element of such an operation is that "the business must transmit money *to a recipient in a place that the customer designates*, for a fee paid by the customer." <u>United States v. Banki</u>, 685 F.3d 99, 113 n.9 (2d Cir. 2012), as amended (Feb. 22, 2012) (emphasis added); <u>see also</u> <u>id.</u> at 113 (holding that this description of a money transmitting business is "legally correct"); <u>United States v. Bah</u>, 574 F.3d 106, 110 (2d Cir. 2009) (describing government's evidence that "certain customers came to Bah's restaurant in the Bronx, delivered United States currency, and instructed Bah *to deliver the equivalent value of local currency to recipients* in West Africa") (emphasis added).

Additionally, although the statute contains no definition of the term "transfer," as included in the definition of the term "money transmitting," the Second Circuit has construed the statute to require direction of the funds from a customer to a third-party identified by the customer:

> A money transmitting business receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates, usually a foreign country. After the customer gives the money transmitter an amount to send to the designee, the transmitter notifies the "payer" with whom it has a contractual arrangement in the recipient country. The payer then notifies the designated recipient of the

> money, and pays the money to the designee at the payer's office.
> The transmitter then remits to the payer the amount paid to the
> designee, plus the payer's commission.

United States v. Velastegui, 199 F.3d 590, 592 (2d Cir. 1999).

Murgio's alleged conduct is quite different from that which the Second Circuit requires under the statute. He purportedly, through Coin.mx, provided customers with valuable items, i.e., bitcoins. The alleged customers did not direct him to send their funds to a third-party. Without instruction that funds be transferred to a place designated by the customer, Coin.mx, as alleged, merely acted as any retailer, selling bitcoins to purchasers.

On this point, it is useful to contrast what is alleged regarding Coin.mx with E-Gold, Ltd., which was federally prosecuted in Washington, D.C. See United States v. E-Gold, Ltd., 550 F. Supp. 2d 82, 85 (D.D.C. 2008). In that case, the D.C. District Court denied a motion to dismiss charges under § 1960 brought against an issuer of an online virtual currency known as "e-gold." Id.

The conduct alleged in E-Gold, Ltd., however, is much different from what is alleged here. Unlike the decentralized system responsible for bitcoins, e-gold was created and operated by a single company that received national currency from customers, provided them with an account for an equivalent amount of e-gold, and then facilitated transfers between e-gold accounts. See id., at 85. E-gold's business model was that "[f]or every transfer of e-gold from one e-gold account to another, e-Gold collects a transaction fee." Id. Critically, these transfers were conducted by the defendants and directed by "the account holder [, who] can then use the e-gold to buy a good or pay for a service, or to transfer funds to someone else." Id. But here neither Coin.mx, Murgio, nor anyone else is alleged to have transmitted funds from one party to another at the direction of an alleged customer. Coin.mx is simply

alleged to have sold bitcoins to customers for a fee.  To the extent that Coin.mx made any "transfers," it was only the sort of transfers inherent in any purchase, and not the sort of directed transmittal required by § 1960's definition of "money transmitting."

Another case that supports this point is United States v. Faiella, 39 F.Supp.3d 544 (S.D.N.Y. 2014).  There, Faeilla was accused of running an underground money transfer network that supplied bitcoins to people who wished to purchase drugs on the "Silk Road" website.  The district court found Faiella was a money transmitter under §1960, in part, because he sent his customers' funds to a third-party agent, the Silk Road, where the customers "did not have full control over the [b]itcoins transferred into their accounts."[11]  Id. at 546.  But in this case, there is no transfer to a third-party alleged.

Taken together, Second Circuit law soundly supports the position that Murgio did not operate a money transmitting business under §1960.

   iii.   The Government's Proposed Reading of 18 U.S.C. § 1960 Raises
          Serious Constitutional Issues

To read § 1960 to prohibit Coin.mx's alleged conduct – simply selling bitcoins – without also requiring that Coin.mx, Murgio, or anyone else transfer the bitcoins to a third-party or location at the direction of the purported customer raises serious constitutional issues. "[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids." Bouie v. City of Columbia, 378 U.S. 347, 353 (1964).  No court has ever applied the money transmitting statute to conduct such as that described here – even the Faiella court – and the

---

[11] The district court also found Faiella was a transmitter based on the FinCEN Guidance.  Id. at 546-47.  The Court should reject this expected argument from the government for the reasons discussed above.

narrow statutory prohibition on unlicensed Western Union-style businesses has held sway in this Circuit for over 16 years.  Applying a construction that encompasses the sort of purchase-transfer that Murgio is alleged to have engaged in through Coin.mx would "depriv[e] [Murgio] of rights guaranteed to [him] by the Due Process Clause."   Id. at 362.

Indeed, the Second Circuit's limited definition of money transmitting in Velastegui has previously been the only thing saving the money transmitting statute from invalidity for failure to "give fair warning of the conduct that it makes a crime."  Bouie, 378 U.S. at 350-51.  In United States v. Elfgeeh, the district court rejected a due process challenge to § 1960 by relying on the Second Circuit's conclusion that a "'money transmitting business' as used in [§] 1960 unambiguously involves 'receiv[ing] money from a customer and then, for a fee paid by the customer, transmit[ting] that money to a recipient in a place that the customer designates.'"  2004 WL 3767299, at *8 (E.D.N.Y. Apr. 13, 2004) (quoting Velastegui, 199 F.3d at 592, 595).

If this Court were to apply a broader construction of the statute than that approved in Velastegui and applied in Elfgeeh, it would be precisely the sort of "unforeseeable judicial enlargement of a criminal statute" that the Due Process Clause forbids, and it would raise severe questions about the validity of § 1960 as a whole owing to its failure to provide adequate notice of the conduct it forbids.

The government can be expected to attempt to dispel the severe constitutional problems inherent to its proposed construction of § 1960 by claiming it is clear.  Such an argument is belied by the way in which numerous courts in this Circuit have struggled to construe the statute's terms.  See, e.g., United States v. Mazza-Alaluf, 607 F. Supp. 2d 484, 489 (S.D.N.Y. 2009) (observing that § 1960 has been "aptly described" as "containing

'somewhat peculiar terms'" (citation omitted); United States v. Ali, 2008 WL 4773422, at
*12-13 (E.D.N.Y. Oct. 27, 2008) ("With the individual terms 'money,' 'transmitting' and
'business' all somehow managing to emerge from [§ 1960] with no greater degree of clarity,
obvious questions jump to the fore: What constitutes a 'business'? What sorts of instruments
fall within the category of 'money,' and which do not? What is 'transmitting'?"); But see
Faiella, 39 F.Supp.3d at 547 (S.D.N.Y. 2014) (finding rule lenity not applicable and no due
process problems); see also Budovsky, 2015 WL 5602853, at *12 (S.D.N.Y. Sept. 23, 2015)
(holding that § 1960 is not unconstitutionally vague).  The above-discussed constitutional
principles (e.g., the rule of lenity and due process standards) warrant an interpretation of
§ 1960 that does not include the simple act of selling bitcoins to a customer.

　　　　Moreover, since First Amendment activity is also implicated by the government's
proposed application of § 1960 (namely, the freedom of association in the form of, among
other things, individuals allegedly coming to together to buy bitcoins online), additional
restrictive principles apply.  As the Supreme Court explained in NAACP v. Button, "[t]hese
[First Amendment] freedoms are delicate and vulnerable, as well as supremely precious in
our society.  The threat of sanctions may deter their exercise almost as potently as the actual
application of sanctions.  [ ] Because First Amendment freedoms need breathing space to
survive, government may regulate in the area only with narrow specificity. []"  371 U.S. 415,
433 (1963) (citations omitted).

　　　　In short, the Court should conclude that constitutional issues with Counts One and
Two are yet another reason to dismiss them.

### b. Murgio Did Not Operate a Money Transmitting Business Under Florida Law

Although Chapter 560 of the Florida Statutes does not cover bitcoins, even if it did for the purposes of argument and in contravention of the plain language of the statute, the allegations against Murgio do not meet Florida's definition of "money transmitter."

As was discussed above, a "money transmitter" is defined in Florida, in pertinent part, as:

> [A] corporation . . . qualified to do business in this state which receives currency, monetary value, or payment instruments for the purpose of transmitting the same by any means, including transmission by wire, facsimile, electronic transfer, courier, the Internet, or through bill payment services or other businesses that facilitate such transfer within this country, or to or from this country.

Fla. Stat. Ann. § 560.103(23).  For the same reasons discussed above with regard to § 1960, this Florida statute does not cover two-party transmissions, such as those alleged here.

Moreover, bringing a charge based on § 560.125 against an individual like Murgio is an unfortunate example of law enforcement applying statutes to new technology that the drafters of the statutes could not have contemplated or have intended.  And in these types of situations, courts have denounced such action as unwise and unfair, and justifiably so.  Cf. People v. Gilbert, 414 Mich. 191, 204-05 (1982) ("Where, as here, the enactment of the statute preceded any possible legislative consideration of the public policy issues, the proper course of action is to await legislative judgment, not to engage in an uncertain attempt to anticipate it."); United States v. Thompson, 281 F.3d 1088, 1099 (10th Cir. 2002) (Seymour, J., dissenting) ("It is not our job to broadly construe [a statute] to reflect new technological situations.").

## **CONCLUSION**

For all the reasons above, Murgio respectfully requests that the Court dismiss Counts One and Two of the Indictment.

Dated: June 17, 2016

/s/ Brian E. Klein
_____

BRIAN E. KLEIN
BAKER MARQUART LLP
2029 Century Park East, Suite 1600
Los Angeles, California 90067
(424) 652-7800


/s/ Robert A. Soloway
_____

ROBERT A. SOLOWAY
ROTHMAN, SCHNEIDER,
SOLOWAY & STERN, LLP
100 Lafayette Street
New York, New York 10013
(212) 571-5500

*Attorneys for Anthony Murgio*

23