**EXHIBIT B**



To view or print PDF content, download the free **Adobe Acrobat Reader**.

Guidance

FIN-2013-G001
**Issued:** March 18, 2013
**Subject:** Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies

      The Financial Crimes Enforcement Network ("FinCEN") is issuing this interpretive guidance to clarify the applicability of the regulations implementing the Bank Secrecy Act ("BSA") to persons creating, obtaining, distributing, exchanging, accepting, or transmitting virtual currencies.[1] Such persons are referred to in this guidance as "users," "administrators," and "exchangers," all as defined below.[2] A user of virtual currency is **not** an MSB under FinCEN's regulations and therefore is not subject to MSB registration, reporting, and recordkeeping regulations. However, an administrator or exchanger is an MSB under FinCEN's regulations, specifically, a money transmitter, unless a limitation to or exemption from the definition applies to the person. An administrator or exchanger is not a provider or seller of prepaid access, or a dealer in foreign exchange, under FinCEN's regulations.

### Currency vs. Virtual Currency

      FinCEN's regulations define currency (also referred to as "real" currency) as "the coin and paper money of the United States or of any other country that [i] is designated as legal tender and that [ii] circulates and [iii] is customarily used and accepted as a medium of exchange in the country of issuance."[3] In contrast to real currency, "virtual" currency is a medium of exchange that operates like a currency in some environments, but does not have all the attributes of real currency. In particular, virtual currency does not have legal tender status in any jurisdiction. This guidance addresses "convertible" virtual currency. This type of virtual currency either has an equivalent value in real currency, or acts as a substitute for real currency.

### Background

      On July 21, 2011, FinCEN published a Final Rule amending definitions and other regulations relating to money services businesses ("MSBs").[4] Among other things, the MSB Rule amends the definitions of dealers in foreign exchange (formerly referred to as "currency dealers and exchangers") and money transmitters. On July 29, 2011, FinCEN published a Final Rule on Definitions and Other Regulations Relating to Prepaid Access (the "Prepaid Access Rule").[5] This guidance explains the regulatory treatment under these definitions of persons engaged in virtual currency transactions.

### Definitions of User, Exchanger, and Administrator

      This guidance refers to the participants in generic virtual currency arrangements, using the terms "user," "exchanger," and "administrator."[6] A *user* is a person that obtains virtual currency to purchase goods or services.[7] An *exchanger* is a person engaged as a business in the exchange of virtual currency for real currency, funds, or other virtual currency. An *administrator* is a person engaged as a business in issuing (putting into circulation) a virtual currency, and who has the authority to redeem (to withdraw from circulation) such virtual currency.

### Users of Virtual Currency

      A user who obtains convertible virtual currency and uses it to purchase real or virtual goods or services is **not** an MSB under FinCEN's regulations.[8] Such activity, in and of itself, does not fit within the definition of "money transmission services" and therefore is not subject to FinCEN's registration, reporting, and recordkeeping regulations for MSBs.[9]

### Administrators and Exchangers of Virtual Currency

An administrator or exchanger that (1) accepts and transmits a convertible virtual currency or (2) buys or sells convertible virtual currency for any reason is a money transmitter under FinCEN's regulations, unless a limitation to or exemption from the definition applies to the person.[10] FinCEN's regulations define the term "money transmitter" as a person that provides money transmission services, or any other person engaged in the transfer of funds. The term "money transmission services" means "the acceptance of currency, funds, or other value that substitutes for currency from one person *and* the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means."[11]

The definition of a money transmitter does not differentiate between real currencies and convertible virtual currencies. Accepting and transmitting anything of value that substitutes for currency makes a person a money transmitter under the regulations implementing the BSA.[12] FinCEN has reviewed different activities involving virtual currency and has made determinations regarding the appropriate regulatory treatment of administrators and exchangers under three scenarios: brokers and dealers of e-currencies and e-precious metals; centralized convertible virtual currencies; and de-centralized convertible virtual currencies.

### a. E-Currencies and E-Precious Metals

The first type of activity involves electronic trading in e-currencies or e-precious metals.[13] In 2008, FinCEN issued guidance stating that as long as a broker or dealer in real currency or other commodities accepts and transmits funds solely for the purpose of effecting a *bona fide* purchase or sale of the real currency or other commodities for or with a customer, such person is not acting as a money transmitter under the regulations.[14]

However, if the broker or dealer transfers funds between a customer and a third party that is not part of the currency or commodity transaction, such transmission of funds is no longer a fundamental element of the actual transaction necessary to execute the contract for the purchase or sale of the currency or the other commodity. This scenario is, therefore, money transmission.[15] Examples include, in part, (1) the transfer of funds between a customer and a third party by permitting a third party to fund a customer's account; (2) the transfer of value from a customer's currency or commodity position to the account of another customer; or (3) the closing out of a customer's currency or commodity position, with a transfer of proceeds to a third party. Since the definition of a money transmitter does not differentiate between real currencies and convertible virtual currencies, the same rules apply to brokers and dealers of e-currency and e-precious metals.

### b. Centralized Virtual Currencies

The second type of activity involves a convertible virtual currency that has a centralized repository. The administrator of that repository will be a money transmitter to the extent that it allows transfers of value between persons or from one location to another. This conclusion applies, whether the value is denominated in a real currency or a convertible virtual currency. In addition, any exchanger that uses its access to the convertible virtual currency services provided by the administrator to accept and transmit the convertible virtual currency on behalf of others, including transfers intended to pay a third party for virtual goods and services, is also a money transmitter.

FinCEN understands that the exchanger's activities may take one of two forms. The first form involves an exchanger (acting as a "seller" of the convertible virtual currency) that accepts real currency or its equivalent from a user (the "purchaser") and transmits the value of that real currency to fund the user's convertible virtual currency account with the administrator. Under FinCEN's regulations, sending "value that substitutes for currency" to another person or to another location constitutes money transmission, unless a limitation to or exemption from the definition applies.[16] This circumstance constitutes transmission **to another location**, namely from the user's account at one location (e.g., a user's real currency account at a bank) to the user's convertible virtual currency account with the administrator. It might be argued that the exchanger is entitled to the exemption from the definition of "money transmitter" for persons involved in the sale of goods or the provision of services. Under such an argument, one might assert that the exchanger is merely providing the service of connecting the user to the administrator and that the transmission of value is integral to this service. However, this exemption does not apply when the only services being provided are money transmission services.[17]

The second form involves a *de facto* sale of convertible virtual currency that is not completely transparent. The exchanger accepts currency or its equivalent from a user and privately credits the user with an appropriate portion of the exchanger's own convertible

virtual currency held with the administrator of the repository. The exchanger then transmits that internally credited value to third parties at the user's direction. This constitutes transmission to **another person**, namely each third party to which transmissions are made at the user's direction. To the extent that the convertible virtual currency is generally understood as a substitute for real currencies, transmitting the convertible virtual currency at the direction and for the benefit of the user constitutes money transmission on the part of the exchanger.

### c. De-Centralized Virtual Currencies

A final type of convertible virtual currency activity involves a de-centralized convertible virtual currency (1) that has no central repository and no single administrator, and (2) that persons may obtain by their own computing or manufacturing effort.

A person that creates units of this convertible virtual currency and uses it to purchase real or virtual goods and services is a user of the convertible virtual currency and not subject to regulation as a money transmitter. By contrast, a person that creates units of convertible virtual currency and sells those units to another person for real currency or its equivalent is engaged in transmission to another location and is a money transmitter. In addition, a person is an exchanger and a money transmitter if the person accepts such de-centralized convertible virtual currency from one person and transmits it to another person as part of the acceptance and transfer of currency, funds, or other value that substitutes for currency.

### Providers and Sellers of Prepaid Access

A person's acceptance and/or transmission of convertible virtual currency cannot be characterized as providing or selling prepaid access because prepaid access is limited to real currencies. [18]

### Dealers in Foreign Exchange

A person must exchange the currency of two or more countries to be considered a dealer in foreign exchange.[19] Virtual currency does not meet the criteria to be considered "currency" under the BSA, because it is not legal tender. Therefore, a person who accepts real currency in exchange for virtual currency, or vice versa, is not a dealer in foreign exchange under FinCEN's regulations.

\* \* \* \* \*

Financial institutions with questions about this guidance or other matters related to compliance with the implementing regulations of the BSA may contact FinCEN's Regulatory Helpline at (800) 949-2732.

---

[1] FinCEN is issuing this guidance under its authority to administer the Bank Secrecy Act. See Treasury Order 180-01 (March 24, 2003). This guidance explains only how FinCEN characterizes certain activities involving virtual currencies under the Bank Secrecy Act and FinCEN regulations. It should not be interpreted as a statement by FinCEN about the extent to which those activities comport with other federal or state statutes, rules, regulations, or orders.

[2] FinCEN's regulations define "person" as "an individual, a corporation, a partnership, a trust or estate, a joint stock company, an association, a syndicate, joint venture, or other unincorporated organization or group, an Indian Tribe (as that term is defined in the Indian Gaming Regulatory Act), and all entities cognizable as legal personalities." 31 CFR § 1010.100(mm).

[3] 31 CFR § 1010.100(m).

[4] *Bank Secrecy Act Regulations - Definitions and Other Regulations Relating to Money Services Businesses,* 76 FR 43585 (July 21, 2011) (the "MSB Rule"). This defines an MSB as "a person wherever located doing business, whether or not on a regular basis or as an organized or licensed business concern, wholly or in substantial part within the United States, in one or more of the capacities listed in paragraphs (ff)(1) through (ff)(7) of this section. This includes but is not limited to maintenance of any agent, agency, branch, or office within the United States." 31 CFR § 1010.100(ff).

[5] *Final Rule - Definitions and Other Regulations Relating to Prepaid Access,* 76 FR 45403 (July 29, 2011),

[6] These terms are used for the exclusive purpose of this regulatory guidance. Depending on the type and combination of a person's activities, one person may be acting in more than one of these capacities.

[7] How a person engages in "obtaining" a virtual currency may be described using any number of other terms, such as "earning," "harvesting," "mining," "creating," "auto-

generating," "manufacturing," or "purchasing," depending on the details of the specific virtual currency model involved. For purposes of this guidance, the label applied to a particular process of obtaining a virtual currency is not material to the legal characterization under the BSA of the process or of the person engaging in the process.

[8] As noted above, this should not be interpreted as a statement about the extent to which the user's activities comport with other federal or state statutes, rules, regulations, or orders. For example, the activity may still be subject to abuse in the form of trade-based money laundering or terrorist financing. The activity may follow the same patterns of behavior observed in the "real" economy with respect to the purchase of "real" goods and services, such as systematic over- or under-invoicing or inflated transaction fees or commissions.

[9] 31 CFR § 1010.100(ff)(1-7).

[10] FinCEN's regulations provide that whether a person is a money transmitter is a matter of facts and circumstances. The regulations identify six circumstances under which a person is not a money transmitter, despite accepting and transmitting currency, funds, or value that substitutes for currency. 31 CFR § 1010.100(ff)(5)(ii)(A)-(F).

[11] 31 CFR § 1010.100(ff)(5)(i)(A).

[12] Ibid.

[13] Typically, this involves the broker or dealer electronically distributing digital certificates of ownership of real currencies or precious metals, with the digital certificate being the virtual currency. However, the same conclusions would apply in the case of the broker or dealer issuing paper ownership certificates or manifesting customer ownership or control of real currencies or commodities in an account statement or any other form. These conclusions would also apply in the case of a broker or dealer in commodities other than real currencies or precious metals. A broker or dealer of e-currencies or e-precious metals that engages in money transmission could be either an administrator or exchanger depending on its business model.

[14] *Application of the Definition of Money Transmitter to Brokers and Dealers in Currency and other Commodities,* FIN-2008-G008, Sept. 10, 2008. The guidance also notes that the definition of money transmitter excludes any person, such as a futures commission merchant, that is "registered with, and regulated or examined by…the Commodity Futures Trading Commission."

[15] In 2011, FinCEN amended the definition of money transmitter. The 2008 guidance, however, was primarily concerned with the core elements of the definition - accepting and transmitting currency or value - and the exemption for acceptance and transmission integral to another transaction not involving money transmission. The 2011 amendments have not materially changed these aspects of the definition.

[16] See footnote 11 and adjacent text.

[17] 31 CFR § 1010.100(ff)(5)(ii)(F).

[18] This is true even if the person holds the value accepted for a period of time before transmitting some or all of that value at the direction of the person from whom the value was originally accepted. FinCEN's regulations define "prepaid access" as "access to funds or the value of funds that have been paid in advance and can be retrieved or transferred at some point in the future through an electronic device or vehicle, such as a card, code, electronic serial number, mobile identification number, or personal identification number." 31 CFR § 1010.100(ww). Thus, "prepaid access" under FinCEN's regulations is limited to "access to funds or the value of funds." If FinCEN had intended prepaid access to cover funds denominated in a virtual currency or something else that substitutes for real currency, it would have used language in the definition of prepaid access like that in the definition of money transmission, which expressly includes the acceptance and transmission of "other value that substitutes for currency." 31 CFR § 1010.100(ff)(5)(i) .

[19] FinCEN defines a "dealer in foreign exchange" as a "person that accepts the currency, or other monetary instruments, funds, or other instruments denominated in the currency, of one or more countries in exchange for the currency, or other monetary instruments, funds, or other instruments denominated in the currency, of one or more other countries in an amount greater than $1,000 for any other person on any day in one or more transactions, whether or not for same-day delivery." 31 CFR § 1010.100(ff)(1).

[12] As our response is not in the form of an administrative ruling, the substance of this letter should not be considered determinative in any state or federal investigation, litigation, grand jury proceeding, or proceeding before any other governmental body.