UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :

UNITED STATES OF AMERICA         :

          - v. -                        :         S6 15 Cr. 769 (AJN)

ANTHONY R. MURGIO,             :
YURI LEBEDEV, and                :
TREVON GROSS,                      :

              Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION
# TO DISMISS THE SUPERSEDING INDICTMENT

 

PREET BHARARA
United States Attorney for the
Southern District of New York

EUN YOUNG CHOI
DANIEL S. NOBLE
WON S. SHIN
Assistant United States Attorneys
   - Of Counsel -

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the letter motion filed on December 29, 2016 ("Def. Mot.") by defendants Anthony R. Murgio, Yuri Lebedev, and Trevon Gross to dismiss the Superseding S6 Indictment (the "S6 Indictment"). For the reasons that follow, the motion should be denied without a hearing.

## BACKGROUND

### A. Pertinent Chronology

The original indictment against Anthony Murgio was filed on November 5, 2015. (ECF No. 14). At a conference held on November 17, 2015, the Court scheduled trial for October 31, 2016. On December 1, 2015, a superseding indictment was filed against Lebedev. (ECF No. 19). On March 1, 2016, a second superseding indictment was filed against Anthony Murgio, Lebedev, and Gross. (ECF No. 57). On April 14, 2016, a third superseding indictment (the "S3 Indictment") was filed against Anthony Murgio, Michael Murgio, Lebedev, and Gross. (ECF No. 87).

On October 6, 2016, counsel for Anthony Murgio moved for a continuance of the trial, to which request the Government did not object. (ECF Nos. 237, 238). On October 11, 2016, the Court granted Anthony Murgio's request for an adjournment and rescheduled the trial for February 6, 2017. On October 27, 2016, Michael Murgio pleaded guilty to a superseding information.

On December 22, 2016, the S6 Indictment was filed against Anthony Murgio, Lebedev, and Gross. (ECF No. 308). Trial is scheduled to begin February 6, 2017.

### B. The S3 Indictment and the S6 Indictment

The S3 Indictment contained nine counts. Anthony Murgio was charged in the following

eight counts: (1) conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. § 371 (Count One); (2) operation of an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960 and 2 (Count Two); (3) conspiracy to make corrupt payments with intent to influence an officer of a financial institution, in violation of 18 U.S.C. § 371 (Count Three); (4) making corrupt payments with intent to influence an officer of a financial institution, in violation of 18 U.S.C. §§ 215(a)(1) and 2 (Count Four); (5) conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count Six); (6) wire fraud, in violation of 18 U.S.C. § 1343 (Count Seven); (7) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Eight); and (8) money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2 (Count Nine). The S3 Indictment charged Lebedev in Counts Three and Four. The S3 Indictment charged Gross with corruptly accepting payments with the intent to be influenced with respect to the business of a financial institution, in violation of 18 U.S.C. § 215(a)(2) (Count Five).

The S6 Indictment filed on December 22, 2016 contains 11 counts. The S6 Indictment modified the S3 Indictment principally as follows:

- Like the S3 Indictment, Counts One and Two of the S6 Indictment against Anthony Murgio each include an allegation under 18 U.S.C. § 1960(b)(1)(C), which prohibits a money transmitting business from engaging in "the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity." The only criminal offense or unlawful activity specified in the S3 Indictment was extortion in furtherance of ransomware schemes, in violation of 18 U.S.C. § 1030(a)(7). The S6 Indictment now specifies an additional criminal offense or unlawful activity: simple possession of controlled substances, distribution of controlled substances, and possession of controlled substances with intent to distribute, in violation of 21 U.S.C. §§ 841 and 844.

- Count Three of the S3 Indictment charged Anthony Murgio and Lebedev with a conspiracy to make corrupt payments with intent to influence an officer of a financial institution, in violation of 18 U.S.C. § 215(a)(1). Count Three of the S6 Indictment also charges Gross as part of this conspiracy, which now includes three additional objects: to receive corrupt payments as an officer of a financial institution with intent to be

2

influenced, in violation of 18 U.S.C. § 215(a)(2); to obstruct an examination of a financial institution by an agency of the United States, in violation of 18 U.S.C. § 1517; and to make material false statements in a matter within the jurisdiction of the executive branch, in violation of 18 U.S.C. § 1001.

- Count Six of the S3 Indictment charged Anthony Murgio with a conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343. Count Six of the S6 Indictment charges Lebedev as part of this conspiracy, which now includes an additional object: to commit bank fraud, in violation of 18 U.S.C. § 1344.

- Count Seven of the S3 Indictment charged Anthony Murgio with substantive wire fraud. Count Seven of the S6 Indictment now also charges Lebedev with this offense.

- Count Eight of the S6 Indictment adds a new charge of substantive bank fraud, in violation of 18 U.S.C. §§ 1344, 1349 and 2, against Anthony Murgio and Lebedev.

- Count Eleven of the S6 Indictment adds a new charge of aggravated identity theft, in violation of 18 U.S.C. § 1028A, against Anthony Murgio.

## ARGUMENT

### I. THE DEFENDANTS' MOTION TO DISMISS THE S6 INDICTMENT IS MERITLESS

#### A. Applicable Law

Under Federal Rule of Criminal Procedure 48, the "Court may dismiss an indictment . . . if unnecessary delay occurs in . . . presenting a charge to a grand jury." Fed. R. Crim. P. 48(b)(1). A Rule 48(b) dismissal of an indictment is an "extraordinary" remedy reserved for the most extreme cases. *United States* v. *Scotto*, No. 06 Cr. 312 (HB), 2006 WL 2494430, at *2 (S.D.N.Y. Aug. 29, 2006) (citing *United States* v. *Elsbery*, 602 F.2d 1054, 1059 (2d Cir. 1979)). To warrant dismissal, a defendant must show that there has been "actual prejudice to [his] right to a fair trial and unjustifiable Government conduct." *Elsbery*, 602 F.2d at 1059.

Furthermore, there is "no authority for the proposition that new 'substantive charges' should be stricken" simply when they are added in close proximity to trial. *United States* v. *Lin*, 505 F. App'x 10, 12 (2d Cir. 2012) (affirming denial of motion to strike superseding indictment

3

returned 27 days before trial). In the absence of a "serious claim . . . of bad faith or dilatory motive on the part of the Government," the Second Circuit has "*never* held that an indictment should be dismissed in such a situation." *Id.* (emphasis added); *see also United States* v. *Skinner*, 946 F.2d 176, 178 (2d Cir. 1991) (defendant "cites no legal authority for the proposition that the district court should have dismissed the superceding indictment," which was returned 19 days before trial).

Indeed, as Judge Kaplan explained in denying a motion to dismiss a superseding indictment returned only 26 days before trial, "the [G]overnment has the right to determine what charges to seek from the grand jury and when to seek them. Such decisions may be influenced by a host of factors, not least of them the prosecutor's estimate of whether the evidence at hand at any given time warrants presentation to the grand jury and is likely to result in an indictment and a conviction." *United States* v. *Montoya-Echeverria*, 896 F. Supp. 148, 150 (S.D.N.Y. 1995); *see also United States* v. *Armstrong*, 517 U.S. 456, 464 (1996) (prosecutorial decisions are entitled to a "presumption of regularity" that can only be overcome by "clear evidence to the contrary" (internal quotation marks omitted)); *United States* v. *Stewart*, 590 F.3d 93, 122 (2d Cir. 2009) ("[T]he decision as to whether to prosecute generally rests within the broad discretion of the prosecutor, and a prosecutor's pretrial charging decision is presumed legitimate." (internal quotation marks omitted)). Thus, dismissal of an indictment "is justified only in extreme cases" involving serious prosecutorial misconduct, such as "when a prosecutor knowingly withholds from the grand jury substantial evidence negating guilt[,] . . . when the grand jury is misled or misinformed[] by the government, . . . or when the history of prosecutorial misconduct is so systematic and pervasive as to raise a substantial doubt and serious question about the

fundamental fairness of the process." *Montoya-Echeverria*, 896 F. Supp. at 150-51 (internal quotation marks and citations omitted).

Rather, if a defendant is prejudiced by the filing of a superseding indictment in close proximity to trial, the settled remedy is to grant a continuance or, depending on the circumstances, to sever the newly added counts for a separate trial. *See, e.g.*, *United States* v. *Rojas-Contreras*, 474 U.S. 231, 236 (1985) ("The authority of the District Court to grant an 'ends of justice' continuance should take care of any case in which the Government seeks a superseding indictment which operates to prejudice a defendant."); *Lin*, 505 F. App'x at 12 ("cure" for potential prejudice is "a reasonable continuance" or "other remedy short of striking the relevant portion of the indictment"); *United States* v. *Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) ("Because the court offered defendants additional time to prepare, which they declined, they cannot establish prejudice from the timing" of the "superceding indictment filed about three weeks before trial."); *Skinner*, 946 F.2d at 178.

**B.    Discussion**

There is no merit to the defendants' claim that the S6 Indictment should be dismissed. *First*, the S6 Indictment does not "substantially alter[] the [G]overnment's case against the defendants." (Def. Mot. 4). *Second*, the defendants have failed to establish any "actual prejudice" to their rights to a fair trial. And *third*, the defendants do not come close to satisfying the standard for dismissal based upon prosecutorial misconduct.

### 1. The S6 Indictment Did Not "Substantially Alter" The Government's Case

The defendants' motion is premised on their contention that the S6 Indictment "substantially alters" the Government's case against them. (Def. Mot. 4; *see also id.* at 5 (describing the S6 Indictment as "vastly different" than the S3 Indictment)). This is not correct.

5

(But even if it were correct, it would not provide a basis for dismissal, as discussed below.) Notably, the defendants fail to particularize how the S6 Indictment will cause them to alter their defense strategies in any way. This is not surprising given that the additional charged offense conduct in the S6 Indictment operates simply to conform the charges against the defendants to the evidence that the Government expects to adduce at trial. Furthermore, the defendants have long been on notice that the Government would seek to introduce evidence of this (previously uncharged) conduct at trial through discovery produced months ago and pretrial motions practice. Indeed, as the defendants acknowledge (*see id.* at 6), the S6 Indictment is not based upon any new discovery.

The changes contained in the S6 Indictment represent, at most, modest evolutions of the Government's legal theories set forth in the S3 Indictment.[1] First, with respect to Counts One and Two, the only modification is the addition of possession and distribution of controlled substances as an offense that was facilitated by Anthony Murgio's operation of Coin.mx, in violation of 18 U.S.C. § 1960(b)(1)(C). Contrary to the defendants' contention, this addition to the S6 Indictment does not mean that Anthony Murgio is "now charged with a controlled substances offense." (Def. Mot. 6). Rather, the Government expects that the evidence at trial will show that in addition to knowingly facilitating ransomware, Anthony Murgio also knowingly processed, through Coin.mx, Bitcoin transactions to facilitate drug purchases on Darknet websites. This evidence comprises documentary materials that were produced to the defendants months ago, as well as the testimony of witnesses whom the Government has

---

[1] The defendants' letter motion inaccurately describes certain charges in the S6 Indictment, specifically Count Three (which is a conspiracy not just to make corrupt payments to an officer of a financial institution, but also to receive such payments, to obstruct an examination of HOPE Federal Credit Union by the National Credit Union Administration ("NCUA"), and to make false statements) and Count Six (which is a conspiracy to commit both wire and bank fraud).

6

interviewed in preparation for trial. Thus, the core conduct charged in Counts One and Two – that Anthony Murgio conspired to operate and operated Coin.mx as an unlicensed money transmitting business – remains unchanged.

Second, the addition of the bank fraud object to the conspiracy charged in Count Six and the new substantive bank fraud offense charged in Count Eight of the S6 Indictment are based substantially on the same evidence and theories as the wire fraud conspiracy and substantive offenses charged in the S3 Indictment. Specifically, the bank fraud charges are based upon misrepresentations that Anthony Murgio and his co-conspirators made to FDIC-insured financial institutions in furtherance of the operation of Coin.mx. Although Counts Six through Eight of the S6 Indictment now name Lebedev as an additional defendant, Lebedev has long been on notice that the Government intended to adduce evidence at trial that he assisted Murgio in the illegal operation of Coin.mx, including in efforts to "trick" financial institutions through which Coin.mx operated. Not only did the S3 Indictment explicitly allege as much (*see* S3 Indictment ¶ 5 (discussing Lebedev's efforts to assist Murgio "trick the financial institutions through which Coin.mx operated")), but the Government further detailed such allegations in its opposition to Lebedev's first motion for severance in order to demonstrate how Lebedev's conduct was "inextricably intertwined" with that of Murgio (Gov't Opp'n to Lebedev's Mot. for Severance (ECF No. 48) 7-8). Thus, the key factual allegations and the Government's theories underlying the new wire and bank fraud charges have been clear to both Anthony Murgio and Lebedev since at least the filing of the S3 Indictment. Moreover, these charges are not based on any new discovery materials.

Third, the addition of Count Eleven of the S6 Indictment, which charges Anthony Murgio with aggravated identity theft, does not amount to a "substantial[] alter[ation]" of the

Government's case against him.  As set forth in the S6 Indictment, this charge is based upon Anthony Murgio's possession and use, and aiding and abetting others' possession and use, of the names and credit card numbers of real Coin.mx customers during and in relation to the wire and bank fraud offenses charged in Counts Six through Eight of the S6 Indictment.  Like the other modifications to the S6 Indictment, the aggravated identity theft charge was based upon the Government's review of documentary evidence previously produced to the defendants and interviews that the Government conducted with witnesses in preparation for trial.  Furthermore, the aggravated identity theft offense, like the new bank fraud offenses, simply charges Anthony Murgio with conduct supported by evidence that the Government would have adduced at trial to prove the previously charged wire fraud offenses.  As such, this charge does not significantly expand the scope of the charges against which Anthony Murgio must defend at trial.

Fourth, the four-object conspiracy now charged in Count Three of the S6 Indictment against all three defendants is at most a modest expansion of the charges in the S3 Indictment.  Only two of the objects of the expanded conspiracy – obstruction of an examination of HOPE Federal Credit Union by the NCUA and making false statements to the NCUA – are not based upon previously charged conduct.  But even with respect to these two additional objects, the defendants have been on notice that the Government intended to introduce evidence at trial concerning the underlying criminal conduct at least since the Government filed its motion *in limine* to introduce certain records of the NCUA on September 12, 2016 (*see* Gov't Motions *in Limine* (ECF No. 191) 19-22), and the defendants had the discovery materials relating to these objects for months before then.  Furthermore, because evidence of these objects is also relevant to the bank bribery charges against the defendants (as the Government argued in its motion *in limine*), it cannot be said that the addition of these two objects represents a significant expansion

of the Government's theories in the S3 Indictment. While Gross is now charged in the expanded conspiracy, which also adds as an object the receipt of bribes, these modifications also do not constitute a substantial departure from the S3 Indictment. Gross was already charged with the substantive offense of receiving bribes as an officer of HOPE Federal Credit Union and was alleged to have worked with Anthony Murgio and Lebedev to facilitate their takeover of the credit union.

In short, the new charges in the S6 Indictment are not vastly different than those already alleged in the S3 Indictment. Rather, they represent logical outgrowths of previously charged offenses or new legal theories applied to the same set of facts. As such, they do not significantly expand the scope of the charges against which the defendants must defend at trial.

### 2. The Defendants Have Not Established Any Actual Prejudice

The defendants accuse the Government of strategically delaying the "the presentment of charges to the grand jury" in an "attempt to gain an improper tactical advantage." (Def. Mot. 1, 6.). This claim is factually and legally baseless. There was nothing unusual about the S6 Indictment being filed on December 22, 2016—over six weeks before the re-scheduled trial date of February 6, 2016. Indeed, the Government routinely supersedes in the months preceding trial—and where the proximity to trial may prejudice the defendant, courts simply grant a continuance (or offer to do so). *See, e.g.*, *United States* v. *Stringer*, 730 F.3d 120, 121, 127-28 (2d Cir. 2013) (superseding indictment filed 25 days before trial; affirming denial of continuance); *United States* v. *Carneglia*, 403 F. App'x 581, 587 (2d Cir. 2010) (superseding indictment filed one month before trial; holding district court properly granted a two-week continuance); *United States* v. *McGee*, 564 F.3d 136, 138, 142 (2d Cir. 2009) (superseding indictment filed four days before trial; affirming denial of continuance); *United States* v. *Gloss*,

No. 08 Cr. 823 (HB), 2009 WL 161063, at *1 (S.D.N.Y. Jan. 21, 2009) (superseding indictment filed two weeks before trial; two-week continuance granted).[2] Thus, in obtaining the S6 Indictment over six weeks before trial, the Government acted in accord with the common and accepted practice in this Circuit.

The defendants point to various "harm[s]" they claim to have suffered as a result of the S6 Indictment (*see* Def. Mot. 5-6), but these are either speculative or insufficient to merit the extraordinary relief of dismissal. First, the defendants argue that they "waived their Speedy Trial Act rights" at various times based upon their assumption that the Government would not supersede. (*Id.* at 5). This claim is disingenuous given that it was the defendants, particularly Anthony Murgio, who sought a continuance of the original trial date of October 31, 2016, and it was Lebedev who *opposed* such continuances on a number of occasions. In any event, the defendants did not "waive" their Speedy Trial Act rights. Rather, in excluding periods of time under the Speedy Trial Act, *see* 18 U.S.C. § 3161(h)(7)(A), the Court found that the exclusion of time was in the interests of justice for a variety of reasons. Accordingly, this factor is insufficient to demonstrate any actual prejudice.

Second, the defendants contend that they have spent "significant time" preparing for trial on the charges in the S3 Indictment, including "filing multiple motions," "developing theories of

---

[2] *See also, e.g.*, *United States* v. *Jason Galanis*, No. 15 Cr. 643 (PKC) (superseding indictment filed one month before trial); *United States* v. *Lasher*, No. 12 Cr. 868 (NRB) (superseding indictment filed one month before trial); *United States* v. *Huff, et al.*, No. 12 Cr. 750 (NRB) (superseding indictment filed approximately three months before scheduled trial, while pretrial motions were pending); *United States* v. *Rana Khandakar et al.*, No. 12 Cr. 584 (JGK) (superseding indictment filed 30 days before trial; trial adjourned three months as a result); *United States* v. *Cibik, et al.*, No. 11 Cr. 424 (NRB) (superseding indictment filed one month before trial); *United States* v. *Patrick Nayyar*, No. 09 Cr. 1037 (RWS) (superseding indictment filed one month before trial; defense adjournment request denied because additional charge relied on same evidence as existing charges).

10

defense," "interviewing witnesses and reviewing discovery," and preparing proposed "jury instructions and voir dire." (Def. Mot. 5). While this may be true, the defendants fail to show how the time and effort already spent preparing for trial amounts to actual prejudice. As discussed above, the additional offense conduct charged in the S6 Indictment is substantially similar to that charged in the S3 Indictment and is not based on any new discovery materials. Counsel's preparation to date, therefore, will not go to waste: it remains relevant for the trial on the charges in the S6 Indictment, which the defendants fail to show will require substantial additional preparation. The defendants' conclusory assertions to the contrary are both unsubstantiated and insufficient to warrant the extreme remedy they seek. For instance, the defendants claim that "many of the motions would not have been filed or would have been substantially modified" (*id.*), but they fail to provide any details concerning which motions would have been modified or what those modifications would have been. Nor do the defendants explain why they cannot now file additional pretrial motions or motions *in limine* addressing the new charges in the S6 Indictment. The defendants also complain that the S6 Indictment will require "new and modified requests to charge and voir dire" (*id.* at 4), but this surely does not amount to any prejudice, particularly since they were drafted jointly with the Government. In short, while the S6 Indictment may require some additional preparation by counsel, the defendants fail to show why six weeks is insufficient to perform such work, or explain how any such additional preparation otherwise results in actual prejudice to the defendants' fair trial rights.[3]

---

[3] Although the Government's position is that trial should proceed on February 6, 2017, it is worth noting that the defendants also fail to explain why a brief continuance could not address the purported "harms" they identify as resulting from the S6 Indictment.

Third, the defendants claim that the new charges in the S6 Indictment are "vague" and "are not of a like kind" with those in the S3 Indictment, thus making it "a real burden" to defend against them. (Def. Mot. 6). Again, the defendants fail to provide sufficient detail to substantiate their claims. The only example of purported vagueness to which the defendants point is the last object of the conspiracy charged in Count Three, specifically to make false statements to the NCUA.[4] As an initial matter, the S6 Indictment provides sufficient detail about the alleged false statements such that a Bill of Particulars is unnecessary. Specifically, the S6 Indictment alleges that as part of the conspiracy:

- Anthony Murgio, Lebedev, and Gross "made material misrepresentations to, and withheld material information from, the NCUA concerning the installation of Lebedev and other Board members selected by Murgio on the Board of HOPE FCU." (S6 Indictment ¶ 15(a));

- Anthony Murgio and Gross "attempted to mislead the NCUA concerning the financial health of HOPE FCU and the eligibility of Lebedev and other Board members selected by Murgio to serve as Board members of HOPE FCU." (S6 Indictment ¶ 15(b)); and

- "In or about January 2015, Murgio and Lebedev caused a letter to be drafted and sent to the NCUA . . . which falsely stated that the 'Collectables Club' was 'headquartered' in Lakewood, New Jersey." (S6 Indictment ¶ 15(c); *see also id.* ¶ 27(k)).

In any event, even if a Bill of Particulars were appropriate, the defendants have failed to show why moving for one now constitutes actual prejudice. As discussed above, to the extent the S6 Indictment charges new offense conduct, such conduct is substantially similar to the conduct that was charged in the S3 Indictment. Moreover, the defendants have long been on notice that the Government intended to introduce evidence of this conduct at trial, even if it was not explicitly charged in the S3 Indictment. The new charges simply represent new legal theories based upon

---

[4] It is worth noting that in conversations with counsel for Anthony Murgio following the filing of the S6 Indictment, the Government disclosed the specific factual bases for the new aggravated identity theft and bank fraud charges. Neither counsel for Lebedev or Gross has requested any further specificity as to any counts in the S6 Indictment.

12

the same set of facts and do not require the review of any additional discovery materials. Thus, the defendants fail to show how they would suffer any actual prejudice in defending against the charges in the S6 Indictment at the upcoming trial.

### 3. There Has Been No Government Misconduct

It is well established that dismissal of an indictment "is justified only in extreme cases" involving serious prosecutorial misconduct, such as "when a prosecutor knowingly withholds from the grand jury substantial evidence negating guilt[,] . . . when the grand jury is misled or misinformed[] by the [G]overnment, . . . or when the history of prosecutorial misconduct is so systematic and pervasive as to raise a substantial doubt and serious question about the fundamental fairness of the process." *Montoya-Echeverria*, 896 F. Supp. at 150-51 (internal quotation marks and citations omitted); *see Lin*, 505 F. App'x at 12 (holding that in the absence of a "serious claim . . . of bad faith or dilatory motive on the part of the Government," the Second Circuit has "*never* held that an indictment should be dismissed" merely because it was returned shortly before trial. (emphasis added)). This is plainly not such an extreme case.

The defendants do not come close to meeting the stringent standard for dismissal of the S6 Indictment. They assert, without any factual support, that the S6 Indictment "represents the [G]overnment's attempt to gain an improper tactical advantage" and that "[t]here is no reason the [G]overnment could not have brought that superseding indictment earlier." (Def. Mot. 6). This sort of conclusory speculation provides no basis for dismissing an indictment. Although many of the facts underlying the additional charges in the S6 Indictment were known to all of the parties since early in the case, the Government's understanding of the facts has evolved as it has

reviewed documents and met with witnesses in preparation for trial.[5]  Furthermore, the defendants provide no support for their allegation that the Government added the aggravated identity theft charge, which carries a mandatory consecutive two-year term of imprisonment, to "penalize the defendants for going to trial or to coerce guilty pleas." (Def. Mot. 6).  The documentary evidence supporting this offense, with which only Anthony Murgio is charged, was produced to the defendants early in the case, and the Government only recently interviewed witnesses whom the Government expects will offer testimony to prove the charge at trial.  As such, the defendants' claim that the aggravated identity theft charge was brought as a penalty is baseless.[6]

The defendants argue that the Court should enforce the Government's "promise" that it would file any substantive superseding indictment within six weeks of the March 4, 2016 pretrial conference. (Def. Mot. 6-7).  At the March 4, 2016 conference, the Court ordered that any

---

[5]   In support of their argument, the defendants point to the Government's "admission" that "there is no discovery [the Government] will be producing relating to" the S6 Indictment.  (Def. Mot. 6).  This does not mean, however, that the Government did not recently obtain any new *evidence* relating to the additional charges in the S6 Indictment.  Indeed, over the last few months the Government has continued to interview witnesses, including witnesses whom the Government is now in a position to call at trial to provide testimony supporting the new charges in the S6 Indictment.

[6]   *United States* v. *Kupa*, 976 F. Supp. 2d 417 (E.D.N.Y. 2013), *aff'd on other grounds*, 616 F. App'x 33 (2d Cir. 2015), upon which the defendants rely, is wholly inapposite.  First, the Court in *Kupa* was not asked to, and did not, dismiss any charge in the indictment, but was simply opining about statutory mandatory minimum sentences in the context of sentencing a defendant.  Second, the Court questioned the Government's filing of a prior felony information that would have increased the otherwise applicable ten-year mandatory minimum to a mandatory term of life imprisonment under 21 U.S.C. § 841(b)(1)(A), *id.* at 432, not the Government's addition of a two-year mandatory minimum charge under 18 U.S.C. § 1028A.  Third, the Court found that the Government had acted coercively by filing the prior felony information days after it had made, and the defendant had rejected, a plea offer without the enhancement.  *Id.* at 432-33.  The defendants do not, and cannot, make any analogous claim here about the timing of any of the new charges in the S6 Indictment.

superseding indictment that added "additional defendants" or "additional charges that change the scope of the case" be filed within six weeks. (3/4/16 Tr. 26 (attached as Exh. A to Def. Mot.)). The Government, however, expressly reserved its right to supersede at least 30 days prior to the then-scheduled October 31, 2016 trial date, so long as that indictment did not add any new charges or new defendants (*Id.*). The Government was prepared to go to trial on October 31, 2016 on the S3 Indictment, but did not oppose Anthony Murgio's requested adjournment. At the conference where the Court granted the continuance, there was no discussion of any pretrial schedule or limitations on superseding for the February 6, 2017 trial. Since that time, and in preparation for trial, the Government developed further evidence, both from its review of documentary evidence that was previously produced in discovery, as well as from interviews of various witnesses. Upon obtaining this evidence, the Government sought the return of the S6 Indictment from the grand jury expeditiously and more than six weeks before the February 6, 2017 trial date. That was a prosecutorial decision the Government was empowered and entitled to make. *See Montoya-Echeverria*, 896 F. Supp. at 150. In any event, as discussed above, the new charges in the S6 Indictment are substantially similar to those charged in the S3 Indictment, arise from conduct about which the defendants have long been on notice, and do not alter the complexion or volume of evidence that the Government intends to present at trial. Against this backdrop, there is no colorable argument that the Government's filing of the S6 Indictment was improper, particularly given that the S6 Indictment does not significantly change the scope of charges against which the defendants must defend at trial.

Notably, the defendants do not cite a single case where a court has dismissed an indictment under circumstances remotely similar to those here. The only cases upon which the defendants rely concern the enforcement of promises made by the Government in written plea

15

agreements and other plea discussions. (*See* Def. Mot. 7). Those cases are inapposite. Critically, in each case the defendant claimed that the indictment should be dismissed because the Government had induced the defendant to cooperate by agreeing not to prosecute. *See United States* v. *Fields*, 592 F.2d 638, 643-44 (2d Cir. 1978) (reversing dismissal of indictment where SEC attorneys who were in civil settlement discussions knew that the defendants wished to avoid a criminal reference, but the SEC failed to disclose that it was in communication with the U.S. Attorney's Office); *United States* v. *Aaronoff*, No. 91 Cr. 221 (CSH), 1992 WL 30680, at *13 (S.D.N.Y. Feb. 10, 1992) (denying motion to dismiss where the Government did not offer a nonprosecution agreement); *United States* v. *Carter*, 454 F.2d 426, 427-28 (4th Cir. 1972) (en banc) (vacating and remanding to determine whether the Government had promised not to prosecute). For such a claim, the remedy of dismissal is available "only in the rare case, where it is impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the prosecutor." *Fields*, 592 F.2d at 648. Here, unlike in those rare cases, the Government made no promise not to prosecute the defendants, and no promise not to supersede to add charges like those in the S6 Indictment. And even if the Government had made any such promises, dismissal is not warranted because a continuance (at most) is all that is required to restore the defendants to their position of having sufficient time to prepare for trial.[7]

Ultimately, as courts have repeatedly held in this Circuit, "the [G]overnment has the right to determine what charges to seek from the grand jury and *when* to seek them." *Montoya-*

---

[7] Nor does *Santobello* v. *New York*, 404 U.S. 257 (1971), support the defendants' claim. In *Santobello*, the prosecution breached its agreement not to make any sentence recommendation. *Id.* at 258. The Supreme Court vacated and remanded for the lower courts to consider whether the defendant was merely entitled to be resentenced before a different judge or whether he could withdraw his guilty plea. *Id.* at 263. The Court did not contemplate dismissal of the indictment as a remedy. *See id.* at 263 n.2 ("If the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charge on two felony counts.").

*Echeverria*, 896 F. Supp. at 150 (emphasis added). Where, as here, the defendants cannot demonstrate any prosecutorial misconduct, courts consistently refuse to dismiss an indictment merely because it was returned shortly before trial. *See, e.g.*, *United States* v. *Grossman*, 843 F.2d 78, 84 (2d Cir. 1988) (affirming denial of motion to strike superseding indictment filed two days before trial); *United States* v. *Hanna*, 198 F. Supp. 2d 236, 245 (E.D.N.Y. 2002) (denying motion to strike superseding indictment that "add[ed] twenty-three mail fraud counts, an allegation of perjury as an additional overt act in the conspiracy and new allegations of kickbacks just two months before the . . . scheduled trial date"); *United States* v. *Gardell*, No. 00 Cr. 632, 2001 WL 1135948, at *2 (S.D.N.Y. Sept. 25, 2001) (denying defendant's claim that he "should [not] be required to stand trial on the fourth super[s]eder given the proximity of its filing to the scheduled trial [35 days beforehand]"); *Montoya-Echeverria*, 896 F. Supp. at 150 (denying motion to strike superseding indictment returned 26 days before trial).

In sum, even if the S6 Indictment had radically reconfigured the charges (which it did not) and had been returned on the eve of trial (which it was not), there would be no basis for dismissing it. Rather, the appropriate remedy for any purported prejudice would be a continuance of the trial date, although the Government submits that in this case no such continuance is warranted.

## **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss the S6 Indictment should be denied without a hearing.

Dated: January 4, 2017  
      New York, New York

Respectfully submitted,

PREET BHARARA  
United States Attorney for the  
Southern District of New York

By:         **/s/**  
EUN YOUNG CHOI  
DANIEL S. NOBLE  
WON S. SHIN  
Assistant United States Attorneys